Argued and submitted June 15, affirmed October 5, reconsideration denied
November 25, petition for review allowed December 20, 1988 (307 Or 245)
See later issue Oregon Reports

POWERS,
*Respondent,*

*v.*

OFFICER CHEELEY et al,
*Appellants.*

(87C-10512; CA A46380)

762 P2d 1019

William G. Blair, Assistant City Attorney, Salem, argued the cause for appellants. With him on the brief was William J. Juza, City Attorney, Salem.

J. Michael Alexander, Salem, argued the cause for respondent. With him on the brief was Burt, Swanson, Lathen, Alexander & McCann, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Defendants appeal the trial court's judgment for plaintiff in this action for assault and battery. Defendants assign as error the trial court's admission of testimony about a witness's prior consistent statements to rebut a charge of recent fabrication under OEC 801(4)(a)(B). We affirm.

On March 19, 1986, defendant Cheeley and Trooper Gilbert assisted Trooper Pecyna in the stop of a vehicle driven by Beaty. The car was owned by plaintiff, a paraplegic, who was a passenger in the right front seat. While Pecyna was talking to the driver, plaintiff rolled down his window and began to argue with Gilbert and Cheeley. During the course of the argument, Cheeley ordered plaintiff to get out of the car. When plaintiff refused, Cheeley grabbed the car door handle, which came off in his hand.

What happened next was the subject of directly conflicting testimony at trial. According to plaintiff, after ripping the door handle off, Cheeley became enraged and attempted to pull plaintiff through the open window. Plaintiff charged that, by dragging him across the car seat, Cheeley damaged the skin in the area of plaintiff's recent surgery. Cheeley testified, however, that he looked at plaintiff's legs through the car window and realized that he is a paraplegic. At that point, he and Gilbert broke off their discussion with plaintiff. According to Cheeley, he at no time touched plaintiff.

The order in which plaintiff called his witnesses bears on the issues presented here. Plaintiff first called Gilbert as an adverse witness. Gilbert testified that, so far as he recollected, "nobody touched anybody that evening." When plaintiff asked him whether "any evidence to the contrary would be fabrication," Gilbert replied, "Yes."[1] Plaintiff later called Beaty, who testified that Cheeley had grabbed plaintiff and tried to pull him through the car window. He also testified that, when he and plaintiff had returned to Beaty's home, they examined the area of plaintiff's surgery and spoke to Beaty's wife, Vicki.

---

[1] The Supreme Court has recently reiterated that one witness may not express an opinion about whether another witness is telling the truth. *State v. Isom*, 306 Or 587, 761 P2d 524 (1988). Here, Gilbert was not asked to pass on the credibility of another witness.

Plaintiff then called Vicki to testify that, when Beaty and plaintiff returned home, both men told her that the police had tried to pull plaintiff from the car. Defendants objected on the basis of hearsay. After an offer of proof, the court excluded Vicki's testimony regarding plaintiff's statements, because plaintiff had not yet testified. It did, however, admit her testimony as to Beaty's statements under OEC 801(4)(a)(B):

"(4) Statements which are not hearsay. A statement is not hearsay if:

"(a) *Prior Statement by Witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:

"* * * * *

"(B) Consistent with the testimony of the witness and is offered to rebut * * * an express or implied charge against the witness of recent fabrication or improper influence or motive * * *."

Vicki's testimony is admissible if defendants made "an express or implied charge of recent fabrication" against Beaty. Defendants argue, however, that they made no such charge. We thus consider for the first time the issue of what kind of impeachment is necessary to constitute a charge of recent fabrication under 801(4)(a)(B).

Defendants first contend that Gilbert did not charge Beaty, specifically, with fabricating the story that Cheeley had tried to pull plaintiff out of the car. Rather, plaintiff asked Gilbert a hypothetical question, namely, whether "any evidence to the contrary [of Gilbert's testimony] would be fabrication?" Because Beaty had not yet even testified, and because Gilbert did not name Beaty specifically as having fabricated a story, defendants argue that Gilbert's statement could not have impeached him.

Second, defendants argue, even if Gilbert's statement can be construed as an implied attack on Beaty's credibility, plaintiff elicited the testimony himself. Defendants assert that permitting a party to suggest that its own witness has fabricated testimony in effect allows the setting up of straw men to knock down with evidence of prior consistent statements. If that is allowed, defendants contend, the hearsay exception embodied in OEC 801(4)(a)(B) will destroy the limits of the rule.

Finally, defendants argue that their cross-examination of Beaty contained no express or implied charge of recent fabrication. Instead, it focused on areas related to potential conflicts between the testimony of Beaty and of plaintiff, serving mainly to lay a foundation for later argument. Because Beaty's credibility was never the object of a "focused and coherent attack," either in Gilbert's testimony or on cross-examination, defendants contend, Vicki's testimony did not fall within the OEC 801(4)(a)(B) exception, but merely bolstered her husband's testimony.

Under the circumstances of this case, however, admission of Vicki's testimony fell within both the plain language and the legislative intent of OEC 801(4)(a)(B). The rationale behind OEC 801(4)(a)(B) is that, when a question has been raised concerning a witness's veracity, proof that he made earlier statements consistent with his testimony under circumstances in which he had no reason to lie should be allowed to remove doubts about his truthfulness. In this case, the trial court recognized that Beaty would have no reason to fabricate a story for his wife's benefit a few minutes after the alleged incident took place. Beaty was available for cross-examination regarding his statements. Moreover, in building their entire case on the theory that plaintiff's allegations were fabricated, defendants "opened the door" to an implication that Beaty was lying. Consequently, the court's admission of Vicki's testimony clearly was proper.

The legislative commentary accompanying subsection 4 of OEC 801 supports this view. It states, in part:

"Prior statements admissible under subparagraph (a)(B) * * * are admitted as substantive evidence. The prior statement reinforces the testimony given on the stand. If the opposite party wishes to open the door for its admission into evidence by attacking the witness, either through the substantive use of prior inconsistent statements or by impugning the witness' motive, no sound reason is apparent why it should not be received generally.

"The Legislative Assembly does not intend, in adopting Rule 801(4)(a)(B), to overrule either *Cook v. Safeway Stores* [266 Or 77, 511 P2d 375 (1973)] or *Hale v. Smith* [254 Or 300, 460 P2d 351 (1969)]. The Legislative Assembly recognizes that in both of those cases the court may have expressed a willingness to allow prior consistent statements for purposes

other than to rebut a charge of recent fabrication or improper influence or motive, e.g. to rebut an imputation of inaccurate memory."

This commentary demonstrates a liberal attitude toward admission of prior consistent statements made by a declarant subject to cross-examination at trial. Conforming with this expression by the legislature, Oregon courts have read the words "implied charge against the witness of recent fabrication" broadly. *See State v. Middleton,* 294 Or 427, 657 P2d 1215 (1983); *Livestock Transportation, Inc. v. Ashbaugh,* 64 Or App 7, 666 P2d 1356, *rev den* 295 Or 773 (1983); *Roach v. Hockey,* 53 Or App 710, 720-21, 634 P2d 249, *rev den* 292 Or 108 (1981).

We agree with defendant that a conflict in the evidence, by itself, will not trigger the exception. Gilbert's testimony, however, amounted to more than a mere conflict in evidence. Defendants' theory of the case was *not* based on an argument that Cheeley used reasonable force on plaintiff or that he did not know that the plaintiff was an invalid. It was based on his complete denial that he even touched plaintiff. It was clear from the start of the trial that the central question to be decided was whose version of events—plaintiff's or defendants'—was to be believed. If one party were believed, the other side must be lying. Given the context, Gilbert's testimony impliedly charged Beaty with fabricating his version of events.[2]

The fact that Gilbert's impeaching statements occurred before Beaty testified is not dispositive of whether they constituted a charge of recent fabrication. Testimony about prior consistent statements may be admitted, even if witnesses are presented out of order, so long as the witness is in fact expressly or impliedly charged with recent fabrication

---

[2] At least one other court held that a defendant's denial of the very existence of an alleged incident constitutes an implied charge of recent fabrication. In *Redmond v. Baxley,* 475 F Supp 1111, 1123 (ED Mich. 1979), decided under the similar federal rule, the court noted:

"In the case at bar the defendants suggested and argued that the rape incident never occurred, as evidenced by the fact that the defendant did not report the rape to the authorities. This constituted an implied accusation that the plaintiff fabricated his story of the rape. Thus, under 801(d)(1)(B) it was proper to admit the letter he wrote to the warden a few days after the rape since the letter tended to show that his story had not been invented later."

at some point in the trial. *See State v. Herrera,* 236 Or 1, 386 P2d 448 (1963); *Livestock Transportation, Inc. v. Ashbaugh, supra.*

Moreover, because the case revolved around which witnesses were telling the truth, plaintiff's drawing out Gilbert's attack on Beaty's credibility cannot be characterized as bootstrapping. Plaintiff did not create an artificial conflict in order to permit him to bolster his own testimony. Rather, he elicited the basic facts of the case from defendants' point of view. Because that raised an inference of fabrication on the part of plaintiff's witnesses, plaintiff's introduction of Vicki's testimony remained essentially defensive.

Finally, despite defendants' avoidance of a direct charge of fabrication, the trial court properly could find that the cross-examination of Beaty raised a sufficient implication of fabrication to trigger the exception.[3] The trial courts have broad discretion in determining whether prior consistent statements should be admitted into evidence. *See Cook v. Safeway Stores, Inc., supra,* 266 Or at 87. The trial judge heard and saw the cross-examination of Beaty. He was aware of the direct conflict in the parties' versions of the events surrounding the stop. He therefore reasonably could determine that defendant was not contending merely that Beaty had failed to observe accurately what was occurring or that he failed accurately to recall the events to which he testified. Beaty's credibility was at issue, because credibility was the central focus of the case.

Affirmed.

---

[3]    "Because the result of exclusion of prior consistent statements, where they are sought to be used for rebuttal purposes, would be to permit an implication of fabrication or falsification to stand without challenge, their admission should be favored to the extent that a generous view should be taken of the entire trial setting in order to determine if there was sufficient impeachment of the witness to amount to a charge of fabrication or improper influence or motivation." *Motorists Mutual Insurance Company,* 21 Ohio App 3d 205, 486 NE2d 1206, 1208 (1985).