Argued and submitted February 2, the decision of the Court of Appeals and the
judgment of the circuit court affirmed April 4, 1989

## POWERS,
*Respondent on Review,*

*v.*

## OFFICER CHEELEY et al,
*Petitioners on Review.*

(TC 87C-10512; CA A46380; SC S35705)

771 P2d 622

William G. Blair, Assistant City Attorney, Salem, argued

the cause and filed the petition for petitioners on review. With him on the brief was William J. Juza, City Attorney, Salem.

J. Michael Alexander, Salem, argued the cause for respondent on review. With him on the response to the petition was Burt, Swanson, Lathen, Alexander & McCann, Salem.

FADELEY, J.

## FADELEY, J.

This civil assault case involves the admissibility of an out-of-court statement offered to prove the truth of the matter asserted. The trial court entered judgment, which the Court of Appeals affirmed, on a jury verdict for plaintiff Stephen Powers against the defendants Salem Police Officer Cheeley and the City of Salem. *Powers v. Officer Cheeley,* 93 Or App 294, 762 P2d 1019 (1988). The out-of-court declarant, William Beaty, testified that Cheeley had tried to pull Powers out of a car through an open window. Beaty's wife, Vicky, subsequently testified that her husband told her the same account of events on the night of the incident.

The general rule is that out-of-court declarations are excluded from evidence when offered to prove the truth of the matter asserted therein. OEC 802 and 801(3); McCormick, Evidence 744, § 251 (3d ed 1984). Powers urges that Vicky Beaty's testimony as to what her husband told her is a consistent statement which is admissible by reason of the recent fabrication exception in OEC 801(4)(a)(B) which provides:

"A statement is not hearsay if:

"(a)    The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:

"* * * * *

"(B)    Consistent with the testimony of the witness and is offered to *rebut* an inconsistent statement *or* an express or *implied charge against the witness* of recent fabrication or improper influence or motive * * *." (Emphasis added.)

The Court of Appeals affirmed the judgment. Defendant appeals. The central issue is: Was there an implied charge of recent fabrication in this case within the meaning of the Oregon Evidence Code? The Court of Appeals reasoned:

"Defendant's theory of the case was * * * based on his complete denial that he even touched plaintiff. It was clear from the start of the trial that the central question to be decided was whose version of events—plaintiff's or defendants'—was to be believed. If one party were believed, the other side must be lying." 93 Or App at 299.

The Court of Appeals also found that "in building their entire case on the theory that plaintiff's allegations were fabricated,

defendants 'opened the door' to an implication that Beaty was lying." 93 Or App at 298.

We disagree with the analysis of the Court of Appeals and with its reading of the rule. Admitting the out-of-court statement was error in the circumstances of this case. But because the error was not prejudicial, we affirm the judgment.

## I

In the early morning hours of March 19, 1986, three police officers from two police agencies left a restaurant. At trial, they testified that their attention was drawn to a 1955 Chevrolet which they decided to pursue because of the manner in which it was being driven. State Trooper Pecyna stopped the vehicle. Immediately thereafter, State Trooper Gilbert and defendant Cheeley arrived in their separate vehicles. Pecyna began to cite William Beaty, the Chevrolet's driver, for excessive tire noise. Cheeley approached Powers, who occupied the passenger side of the Chevrolet, and asked Powers to get out. When Powers did not get out, Cheeley, who stands six feet three inches tall and weighs 225 pounds, pulled the passenger side-door handle off the automobile.

What happened next is disputed. Cheeley testified that he did not touch Powers. Powers testified that Officer Cheeley reached into the vehicle with both hands and tried to pull Powers out through the open window, stopping only when it became apparent that Powers was a paraplegic.

Powers contends that he was pulled across the seat of the auto, opening a recent skin graft which had been surgically implanted to correct pressure ulcers in the area between his rectum and scrotum. Cheeley argued that this injury occurred either when he was not present or that Powers had opened the skin graft by sliding across the seat in the opposite direction to avoid being near the open window on the vehicle's passenger side.

Over objection, Vicky Beaty testified that, when her husband and Powers returned to the Beaty household about 15 minutes after the incident, Mr. Beaty told her that a policeman tried to pull Powers through the window. She also testified, without objection, that upon returning home her husband took down Powers's pants, looked at the area of

Powers's body, and told her it was pretty bad, too bad for her to look at.

Plaintiff's plastic surgeon, who had implanted the skin graft five weeks before the incident and who had continued to follow the plaintiff's condition since that operation, testified that he had treated the aggravated condition within hours after the incident.

Powers claims damages from Cheeley and the City of Salem as his employer.

The order of proof was unusual in this case and that, perhaps, led the trial court into a mistake. At trial Powers's counsel called Trooper Gilbert as his first witness and asked:

"Q. * * * [Y]our recollection is nobody touched anybody that evening?

"A. No.

"Q. And *any evidence* to the contrary would be *fabrication?*

"A. Yes." (Emphasis added.)

Defendant made no objection or motion to strike.

Powers later called to the witness stand Mr. Beaty, who was not asked about and did not testify to the out-of-court statement.[1] Powers next called Vicky Beaty:

"Q. [By Powers's attorney]   Did you have any discussions with your husband and Mr. Powers when they returned that evening?

"A. Yes. They told me what happened.

"Q. What did you tell you?

---

[1] There is a split of authority under FRE 801(d), which is similar to OEC 801(4), on the question of whether the declarant must be the witness through whom the out-of-court statement is introduced. *Compare United States v. Gonzalez,* 700 F2d 196, 202 (5th Cir 1983) (declarant need not be the witness through whom the prior consistent statement is introduced at trial) *with United States v. West,* 670 F2d 675, 686-87 (7th Cir 1982) (declarant must be the witness through whom the prior consistent statement is elicited). The majority rule appears to be that the declarant need not be the witness through whom the statement is elicited at trial. *See id.* at 687. We need not decide whether Oregon follows one view or the other since no objection was offered on that ground. OEC 103(1)(a); *see* ORAP 7.19(5).

"[Defendant's attorney]    Objection. Hearsay."[2]

The objection was sustained on the ground that the testimony would not be within OEC 801(4)(a)(B). After an offer of proof, the court focused on the words "implied charge" in OEC 801, referred in general to the commentary to the rule,[3] and decided to admit the statement into evidence.

Vicky Beaty testified that when her husband arrived home after the alleged assault he said to her "that they were stopped and that the police officer hadn't believed Steve [Powers] couldn't get out of the car and tried to pull him out through the window." Defendants assign error based upon admission of this testimony.

## II

Was this testimonial evidence admissible under the recent fabrication rule? A requirement for admissibility is that the "*declarant* testifies at the trial or hearing and is subject to cross-examination *concerning the statement* * * *." OEC 801(4)(a) (emphasis added). Although William Beaty was not asked about his out-of-court statement, he did testify. No effort was made to recall him for cross-examination concerning the statement. For the purposes of this case we will assume that that portion of the rule just quoted was satisfied. *See supra,* note 1. But to be admitted under this exception, the out-of-court statement must be "consistent with the testimony of the [declarant as a] witness." OEC 801(4)(a)(B). Because the rule is couched in terms of "offered to rebut," there is some authority that impeachment of the declarant

---

[2] Power's counsel argued:

"[E]ven if Trooper Gilbert hadn't said anything, the whole case is one that someone has fabricated a story and prior consistent statements are, therefore, admissible."

Defendant's counsel also objected:

"[A] general and hypothetical question that compares Trooper Gilbert's understanding of the facts with some hypothetical, and, as yet, unvoiced testimony, does not give rise to the operation of that rule."

[3] Oregon Evidence Code 146 (Oregon State Bar CLE (1981)) [hereinafter cited as "Commentary"]. The comments were not adopted by the legislature. The commentary is *nonetheless* useful. Both code and comments may also be found in Kirkpatrick, Oregon Evidence (1982), and Evidence (Oregon State Bar CLE (1986)).

witness is a precondition to admissibility. 4 Weinstein, Evidence 801-152-53 (1988). Our decision does not turn on this point.

### A. *What Does "Recent Fabrication" Mean in the Context of OEC 801?*

"Recent fabrication" are words of art having a meaning and a context in which they were customarily employed in the law long before the Oregon Evidence Code was adopted. In 1836, Justice Story recognized a specific hearsay exception, describing it "as where the testimony is assailed as a fabrication of a recent date, or a complaint recently made; for there, in order to repel such imputation, proof of the antecedent declaration of the party may be admitted." *Ellicott v. Pearl,* 35 US (10 Pet) 412, 439, 9 L Ed 475, 487 (1836).

This court recognized the rule that generally prior consistent declarations of a witness are inadmissible in *Maeder Steel Products Co. v. Zanello,* 109 Or 562, 577, 220 P 155 (1924). The *Maeder* court noted an exception which allows admitting out-of-court declarations of a witness that are consistent with the witness's testimony at trial but only if qualified under the recent fabrication rule:

> " 'Where, however, a witness has been assailed on the ground that his story is a recent fabrication, or that he has some motive for testifying falsely, proof that he gave a similar account of the transaction when the motive did not exist, before the effect of such account could be foreseen, or when motives of interest would have induced a different statement, is admissible * * *.' " 109 Or at 578 (citation omitted).

*Maeder* implies what other cases expressly hold, that the word "recent" means that the prior consistent statement which may be admitted is one made before the alleged motive to fabricate arose. As Professor McCormick explains, the class of statements are admissible "to show that a witness whose testimony has allegedly been influenced told the same story *before* the influence was brought to bear." McCormick, Evidence 747, § 251(d)(1)(B) (3d ed 1984) (emphasis added). That chronology of prior statement first, influence or motive second, distinguishes the admissible statement from one which may be fabrication of "recent" origin. The absence of motive or influence to fabricate at the time the statement was made increases its trustworthiness. A statement made after the

motive to fabricate arises is not as trustworthy and is excluded. As New York's highest court has said:

> "Of course, if the word 'recent' in this court's formulation of the exception, in the cases above cited, means that the witness' statements at the trial must have been assailed as having been fabricated at some point just before the trial, this was no case for applying the exception. But we think that 'recent' as so used, has a relative, not an absolute meaning. It means, we think, that the defense is charging the witness not with mistake or confusion, but with making up a false story well after the event. See Commonwealth v. Retkovitz, 222 Mass. 245, 250, 110 N.E. 293."[4] *People v. Singer,* 300 NY 120, 89 NE2d 710, 711 (1949).

The Commentary, *supra* note 3, at 147, is in accord, stating "[t]he Legislative Assembly [also] was unwilling to countenance the general use of prior statements as substantive evidence" even though the declarant is available at trial, under oath and subject to cross-examination.

In this case, Beaty made the statement 15 minutes after the incident. The doctor had not yet seen the condition. No lawsuit had been filed; no attorney consulted. Defendants did not articulate any specific charge against Beaty as to what his motive to fabricate a story might be. His friendship with Powers is clear, but Beaty claimed neither injury nor damages on his own behalf. There is no reference point for use in determining when a claimed motive or influence to falsify may have arisen here.

B. *What Does "implied charge against the witness" Mean?*

For the purposes of this case, it is sufficient to decide what "implied charge" does *not* mean.

Counsel for Powers argued to the trial court that "even if Trooper Gilbert hadn't said anything, the whole case

---

[4] In *People v. Singer,* 89 NE2d at 711-12, the court said:

" 'Recently fabricated' means the same thing as fabricated to meet the exigencies of the case. See Judge Werner's discussion in People v. Katz, 209 N.Y. 311 at page 340, 103 N.E. 305, 314, Ann. Cas. 1915A, 501. Judge Hand, in Di Carlo v. United States, 2 Cir., 6 F.2d 364, 366, after careful examination of authorities and reasons, stated the exception thus: 'that, when the veracity of a witness is subject to challenge because of motive to fabricate, it is competent to put in evidence statements made by him consistent with what he says on the stand, made before the motive arose.' "

is one that someone has fabricated a story and prior consistent statements are, therefore, admissible." Unsure if that argument was enough to carry the day, Powers's counsel also fertilized the ground from which his hopes sprang by asking Trooper Gilbert, "And *any evidence* to the contrary would be *fabrication?*" (Emphasis added.)[5]

Defense counsel objected to the prior consistent statement on two grounds. The first was "hearsay." The second was that the hypothetical question to Gilbert did not satisfy the rule.

The historical meaning of "implied charge" and its present meaning do not include cases of simple contradiction concerning the facts of the case among or between witnesses. 4 Wigmore, Evidence 267, (Chadbourne rev 1972), states that contradiction is impeaching but asserts that multiplying the number of contradictions proves nothing:

" § 1127 *Offered (4) after impeachment by contradiction*

"A former consistent statement helps in no respect to remove such discredit as may arise from a contradiction by other witnesses. * * * If that were an argument, then the witness who had repeated his story to the greatest number of people would be the most credible."

*United States v. Quinto,* 582 F2d 224, 234-35 (2d Cir 1978), interpreting Federal Evidence Rule 801(d)(1)(B) and referring to the section of Wigmore's treatise quoted, held that it was error for the trial judge to admit a prior consistent statement after the declarant had been contradicted by other witnesses.[6]

---

[5] This was not a proper question. It is for the court to determine whether there has been a charge of "recent fabrication." OEC 104(1). Moreover, it is not normally proper for one witness to comment upon other evidence, certainly not to give an opinion that such evidence is a fabrication. *See, infra,* note 11. But no objection was made.

[6] On this point, supporting authority is abundant. 4 Louisell & Mueller, Federal Evidence 198, § 420 (1980), states "[N]or, ordinarily, does impeachment by contradiction" make prior consistencies relevant; rather they "should be excluded altogether." In *Breneman v. Kennecott Corp.,* 799 F2d 470, 473 (9th Cir 1986), the court stated: "Mere contradictory testimony cannot give rise to an implied charge of fabrication." *See* Annot., 140 ALR 21 (discussing "[A]dmissibility, for purpose of supporting impeached witness, of prior statements by him consistent with his testimony"); 75 ALR 2d 909, 928 (discussing same subject). The general rule among state courts is that neither mere contradiction nor impeachment by contradiction renders the prior consistent statement admissible. *See* Annot., 140 ALR 21, 38 (1942); 75 ALR 2d 909, 928 (1961); 58 ALR 4th 1014, 1025 (1987) (criminal cases); 59 ALR 4th 1000, 1009-10 (1988) (civil cases).

■   No Oregon authority supports plaintiff's argument that a direct conflict in the evidence that differing witnesses recount satisfies the requirement of OEC 801(4)(a)(B) that an "implied charge" of fabricated testimony be made. The cases cited by the Court of Appeals do not support that argument.[7] Indeed, one is actually contrary to it.[8] Plaintiff's argument that contradictions in testimony amounts to a charge of recent fabrication prove too much. Many jury trials involve a difference in testimony about facts. Plaintiff's argument would

---

[7] *State v. Middleton,* 294 Or 427, 657 P2d 1215 (1983), is a case of impeachment by a prior inconsistent statement, not one of recent fabrication. *State v. Herrera,* 236 Or 1, 386 P2d 448 (1963), found the admission into evidence improper because there was no preceding direct attack on the credibility of the declarant. This court discussed the impropriety of admitting in evidence a neighbor's testimony that a six-year-old told her "Daddy jumped on Frankie." *Herrera, supra,* states:

> "Before the boy's testimony had been impeached in any manner, it was improper for the state to seek to help the boy's oath by bringing in the neighbor's testimony that the boy had told the same story before. * * * The testimony was, accordingly, inadmissible for any purpose at the time it was offered." 236 Or at 8 (citing *Maeder, supra,* 109 Or at 577).

The Court of Appeals also cited two of its own cases. In *Livestock Transportation v. Ashbaugh,* 64 Or App 7, 10, 666 P2d 1356, *rev den* 295 Or 773 (1983), an auto collision case, plaintiff's passenger said a woman pointed out the window. In an investigative statement the passenger had said a man pointed. Plaintiff never testified that anyone pointed. The court said, "we fail to see how the use of [the passenger's] prior inconsistent statement amounts to an implied charge of recent fabrication against [plaintiff]." Impeachment by prior inconsistent written statement of the witness on the stand preceded admission of the prior consistent statement in *Roach v. Hockey,* 53 Or App 710, 720-21, 634 P2d 249, *rev den* 292 Or 108 (1981). None of the Oregon cases cited by the Court of Appeals support a finding that there was an implied charge of recent fabrication here.

The Court of Appeals cited two cases from other jurisdictions. *Redmond v. Baxley,* 475 F Supp 1111 (ED Mich 1979), is a case where pointing out the witness was silent when a natural reaction would be to speak out constituted the implied charge of recent fabrication. *Motorist Mut. Ins. Co. v. Vance,* 21 Ohio App 3d 205, 486 NE2d 1206 (1985), involved cross-examination based on the fact that the defendant had not sought contribution from the witness, who was also liable for plaintiff's damages as a joint tortfeasor with defendant. The defendant had paid air fare from Florida so that the witness could come to trial. The court expressly found that the cross-examination of the witness about his economic motive to agree with the defendant constituted an implied charge of recent fabrication. A recorded phone conversation made soon after the accident and consistent with trial testimony was admitted.

[8] In *Redmond v. Baxley, supra,* n 7 at 1123, the court explained:

> "[D]efendants suggested and argued that the rape [of the prisoner who sued the prison authorities for failing to protect him from other inmates] never occurred, as evidenced by the fact that [plaintiff] did not report the rape to the authorities. This constituted an implied accusation that the plaintiff fabricated his story of the rape. * * * [T]he letter he wrote to the warden a few days after the rape * * * tended to show that his story had not been invented later."

In the instant case there is no claim, or factual basis for a claim, that plaintiff delayed reporting the injury or the details of how it occurred.

apply in many cases and, in effect, repeal the rule of OEC 801(4)(a)(B). It would reward the garrulous but not the reticent.

The Court of Appeals, 93 Or App at 298-299, also rested its holding that the testimony was admissible upon the following quotation from the first paragraph of the Commentary on OEC 801(4)(a)(B):

> "Prior consistent statements traditionally have been admissible to rebut charges of recent fabrication or improper influence or motive, but not as substantive evidence. Prior statements admissible under subparagraphs (a)(B), however, are admitted as substantive evidence. The prior statement *reinforces the testimony* given on the stand. If the *opposite party wishes to open the door* for its admission into evidence *by attacking the witness,* either through the substantive use of prior inconsistent statements or by impugning the witness' motive, no sound reason is apparent why it should not be received *generally.*" Commentary, at 146-47 (citations omitted; emphasis added).

Some ambiguity may be found in the word "generally" if context is overlooked or disregarded. The quoted portion of the first paragraph of the subsection (a)(B) commentary is nearly identical with the federal advisory committee comments to proposed Federal Rule of Evidence 801(d)(1)(B).[9] In context, "generally" means the evidence is admitted as substantive evidence of the truth of the facts stated, rather than being limited to use in judging credibility of the witness. In that respect—use as substantive evidence—OEC 801(4) changed the law. But the requirements before admission and circumstances for admission remained as at common law.[10] Reliance on the commentary to support

---

[9] Saltzburg & Redden, Federal Rules of Evidence Manual 478-79 (2d ed 1977):

"Prior consistent statements traditionally have been admissible to rebut charges of recent fabrication * * * but not as substantive evidence. Under the rule they are substantive evidence. The prior statement is consistent with the testimony given on the stand, and, if the opposite party wishes to open the door for its admission in evidence, no sound reason is apparent why it should not be received generally."

[10] Professor Kirkpatrick reports in Oregon Evidence 333 (1982), that "[t]he Commentary does not reveal an intent to expand the circumstances under which prior consistent statements may be received; instead it only intends to allow them now to be received as substantive evidence as well as for rehabilitation." Therefore the conclusion in Evidence 37-7, § 37.12 (Oregon State Bar CLE 1986) that "[s]uch an implied charge probably is available in most controversies" should be read with caution and in

admission is misplaced.

■　In the case before us, no party "opened the door" by "attacking the witness" specifically. Certainly the "opposite party" did not. The word "fabrication" which plaintiff's counsel put in Gilbert's mouth amounts to an expression of opinion as to credibility of witnesses who counsel knew would testify concerning testimony which counsel knew would be given. Several, but not all, of our opinions expressly denouncing this practice have come since the trial of this case. The procedure employed was improper at the time of trial, and since then we have stated that this type of question should not be allowed in any trial conducted in this state.[11] Admission of the out-of-court statement was error.

### III

■　The question remains whether the error justifies reversal. The jury heard other evidence admitted to prove the same early attribution of the injury to Cheeley. The plaintiff's plastic surgeon testified that plaintiff told him tearfully while he was being treated on the day of the injury for the re-opened skin graft that the injury occurred when defendant grabbed him and tried to pull him from the automobile through the car window. This evidence was received without objection even though the specifics as to defendant's conduct may not have been germaine to treatment.[12]

---

conjunction with this case. Care also must be taken to distinguish, in that volume, between the contemporaneous commentary and that later penned by the CLE section writers.

Professor Kirkpatrick cautions that *Livestock Transportation v. Ashbaugh,* 64 Or App 7, 666 P2d 1356, *rev den* 295 Or 773 (1983), is "troubling, because the 'rehabilitation' of plaintiff by prior consistent statement occurred before the plaintiff had even testified." Kirkpatrick, Oregon Evidence 125 (Supp 1988-89). Questions as to whether an implied charge has been made will be greatly simplified at trial if the normal order of impeachment and rehabilitation and rebuttal is maintained.

[11] "We expressly hold that in Oregon a witness, expert or otherwise, may not give an opinion on whether he believes a witness is telling the truth." *State v. Middleton,* 294 Or 427, 438, 657 P2d 1215 (1983). "We have said before, and we will say it again, but this time with emphasis—we really mean it—* * * [t]he assessment of credibility is for the trier of fact * * *." *State v. Milbradt,* 305 Or 621, 629, 756 P2d 620 (1988). "We now inform all trial counsel that this type of cross-examination [*i.e.,* if a witness says "x," would he be lying?] will not be tolerated in any court of this state." *State v. Isom,* 306 Or 587, 591-92, 761 P2d 524 (1988). *See State v. Carr,* 302 Or 20, 27, 725 P2d 1287 (1986); *State v. Brown,* 297 Or 404, 443, 687 P2d 751 (1984) ("[n]o witness may pass on the credibility of another witness"); *State v. Walgraeve,* 243 Or 328, 333, 412 P2d 23, 413 P2d 609 (1966) (excluding psychiatric testimony as to the credibility of witnesses).

[12] The Commentary indicates that a portion of the treating doctor's statement

Cheeley's counsel does not challenge the sufficiency of the remaining evidence. He relied on the error and argued that an error in admitting evidence "on a kernel issue" requires reversal. We disagree. Evidentiary error is not presumed to be prejudicial. OEC 103. We cannot say that if the challenged evidence had been excluded the result of the trial would have been any different. OEC 103; Commentary, *supra* note 3, at 37-38. The other evidence of like effect diminishes any argument that a substantial right was affected by the error.[13] Appellant presented no such argument. The error was not prejudicial here.

The decision of the Court of Appeals is affirmed; the judgment of the circuit court is affirmed.

---

may not have been admissible under OEC 803(4):

"Statements as to fault ordinarily would not qualify under the language of this subsection. Thus, a statement that the declarant was struck by an automobile would not be excluded, as touching causation; a statement that the car was driven through a red light would, as touching fault." Commentary, *supra* note 3, at 156-57.

[13] "Rule 103. Rulings on evidence. (1) Effect of erroneous ruling. Evidential error is not presumed to be prejudicial. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected * * *.

"COMMENTARY

"* * * * *

"*Subsection (1)*. Under subsection (1), rulings on evidence cannot be assigned as error unless a substantial right is affected, and the nature of the error was called to the attention of the trial judge * * *.

"Subsection (1) abolishes the rule established by the Oregon Supreme Court in civil cases, and suggested for criminal cases, that erroneously admitted evidence is deemed prejudicial unless the contrary is affirmatively shown. * * * The Legislative Assembly intends that no presumption regarding evidential error operate in favor of either party in the appeal of a civil case." Commentary, *supra*, at 37.

OEC 103(4) contains a plain error clause. But this case does not rise to that level. *See State v. Mains*, 295 Or 640, 650 n 6, 669 P2d 1112 (1989).

In any event, the testimony of Vicky Beaty seems simply cumulative of the doctor's testimony to which no objection was made. If the prior consistent statement had been excluded, would the result of the trial been different? *See Pearson v. Galvin*, 253 Or 331, 340, 454 P2d 638 (1969); ORS 19.125. Adoption of OEC 103 superseded prior cases which presumed that prejudice always resulted from a mistake in admitting evidence. *See State v. Miller*, 300 Or 203, 221, 709 P2d 225 (1985); *see also State v. Hansen*, 304 Or 169, 181-82, 743 P2d 157 (1987).