Argued and submitted January 17, decision of the Court of Appeals affirmed in part and reversed in part; judgment of the circuit court reversed and remanded in part; otherwise affirmed May 22, reconsideration denied July 1, 1997

Marianne L. KEYS,
*Respondent on Review,*

*v.*

William M. NADEL, M.D.,
and William M. Nadel, M.D., P.C.,
*Petitioners on Review.*

(CC 92C-11839; CA A84904; SC S43332)

937 P2d 521

J. Michael Alexander, of Burt, Swanson, Lathen, Alexander, McCann & Smith, P.C., Salem, argued the cause and filed the brief on behalf of respondent on review.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Graber, Durham, and Kulongoski, Justices.**

KULONGOSKI, J.

---

** Fadeley, J., did not participate in the consideration or decision of this case.

## KULONGOSKI, J.

The issue in this medical negligence case is whether certain prior consistent statements of a witness who testified at trial were admissible as nonhearsay statements, pursuant to Oregon Evidence Code (OEC) 801(4)(a)(B), which provides:

"A statement is not hearsay if:

"(a) The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:

"* * * * *

"(B) Consistent with the testimony of the witness and is offered to rebut an inconsistent statement or an express or implied charge against the witness of recent fabrication or improper influence or motive[.]"

We hold that the statements were admissible and that their exclusion was reversible error.

Plaintiff has not argued that the prior consistent statements were admissible to rebut an inconsistent statement or a charge of improper influence or motive. The issue, therefore, is whether defendant[1] made a charge of recent fabrication against plaintiff and, if so, whether the prior consistent statements properly could have been introduced to rebut that charge.

To decide that legal issue, it is necessary to understand the events that led to this appeal. In 1990, plaintiff suffered from persistent abdominal pain and constipation. She was diagnosed to have an abnormally elongated and twisted colon. Defendant performed surgery on plaintiff. He removed five to six feet of her colon and reattached the large and small intestines.

At some point after the surgery, plaintiff began to suffer from nausea, vomiting, and bloody stools. Eventually, in July 1992, another surgeon, Dr. Gaiser, performed a second surgery on plaintiff. During that surgery, he discovered a

---

[1] There are two defendants: Dr. William M. Nadel and his professional corporation. We refer to them in the opinion as defendant.

360-degree "twist" in plaintiff's bowel. Dr. Gaiser concluded that the twist caused an obstruction that, in turn, caused plaintiff's symptoms. Upon removal of the obstruction, plaintiff's symptoms subsided.

Thereafter, plaintiff sued defendant, alleging, among other things, (1) that defendant negligently removed a portion of her colon, (2) that he negligently twisted her colon in reconnecting the small and large intestines and thereby caused an obstruction, and (3) that he negligently disregarded her post-surgical symptoms.

A central issue in this case concerned whether or not plaintiff had informed defendant, during their post-operative consultations, that she suffered from nausea, vomiting, and bloody stools. In plaintiff's case-in-chief, she called defendant as a witness. He testified that, during their post-operative consultations, plaintiff told him that she suffered from diarrhea, but did not tell him that she suffered from nausea, vomiting, or bloody stools. He also testified that plaintiff's post-operative medical records did not indicate that plaintiff informed him of those symptoms.

Dr. Gaiser then testified on plaintiff's behalf. He stated that plaintiff informed him of the symptoms when he examined her and that that information led to his recommendation of further surgery.[2]

Plaintiff then testified that she told defendant of the symptoms during their post-operative consultations. On cross-examination, defense counsel asked plaintiff repeated questions concerning when she asserted that her symptoms commenced and whether or not her symptoms had included bloody stools.

Finally, two friends appeared as witnesses on plaintiff's behalf. One of them testified that she had observed plaintiff's symptoms shortly after the surgery performed by defendant. Plaintiff's counsel then sought to introduce testimony from the friends to the effect that plaintiff told them

---

[2] Plaintiff's lawyer sought to have Dr. Gaiser testify that plaintiff told him that she had told defendant of her symptoms. That testimony was barred by the trial court as inadmissible hearsay. The Court of Appeals affirmed that ruling, and it is not at issue on review.

that she had told defendant of the symptoms during their post-operative consultations. Plaintiff asserted that the statements were admissible under OEC 801(4)(a)(B) because, during the cross-examination of plaintiff, defense counsel had raised an inference of fabrication concerning whether plaintiff told defendant of the symptoms. The trial court ruled that such testimony was inadmissible hearsay and not subject to OEC 801(4)(a)(B).

Dr. Gabe testified for the defense. He had been plaintiff's referring physician and assisted defendant with plaintiff's surgery. Dr. Gabe testified that he examined plaintiff four months after her first surgery and that plaintiff did not tell him that she suffered from nausea, constipation, or bloody stools.

The jury returned a verdict for defendant. On plaintiff's appeal, the Court of Appeals concluded that plaintiff's prior consistent statements to her friends had been excluded erroneously by the trial court and that the error was prejudicial. *Keys v. Nadel*, 140 Or App 611, 915 P2d 1030 (1996). For the reasons that follow, we affirm in part and reverse in part the decision of the Court of Appeals.

In *Powers v. Officer Cheeley*, 307 Or 585, 771 P2d 622 (1989), this court addressed the question whether prior consistent statements were admissible under OEC 801(4)(a)(B) to rebut a charge of recent fabrication. This court interpreted that rule and concluded that the legislature intended the phrase "recent fabrication" to operate as a chronological reference point for those types of prior consistent statements that trigger the rule. 307 Or at 591. Only those prior consistent statements that were made "before the alleged motive to fabricate arose" are admissible under the rule. *Ibid.*[3]

This court also determined what an "implied charge" does *not* mean, stating that the "meaning of 'implied charge'

---

[3] In *Powers*, this court said:

" 'Recently fabricated' means the same thing as fabricated to meet the exigencies of the case." 307 Or at 592 n 4 (quoting *People v. Singer*, 300 NY 120, 89 NE2d 710, 711-12 (1949)).

\* \* \* do[es] not include cases of simple contradiction concerning the facts of the case among or between witnesses." *Id.* at 593. The court noted further that "[m]any jury trials involve a difference in testimony about facts" and that to find any factual contradictions, standing alone, were sufficient to trigger the rule "would reward the garrulous but not the reticent." *Id.* at 594-95.

Defendant argues that this case is consistent with the "simple contradiction" of testimony that *Powers* discussed. On that basis, defendant argues that the prior consistent statements were not admissible. We disagree.

To understand the scope of this court's holding in *Powers*, it is necessary to consider its factual context. There, the central issue was whether a police officer had attempted to pull the plaintiff out of a car through a window. At trial, the plaintiff testified that the officer had done so, and the officer testified that he had not. The contested prior consistent statement came from the wife of the plaintiff's driving companion. She testified that her husband told her shortly after the incident that the officer had attempted to pull the plaintiff out of the car through the window.

In *Powers*, the basis for the charge of recent fabrication was the response of a defense witness, on cross-examination, to a question from the plaintiff's counsel. Concerning certain factual testimony of that witness, the plaintiff's counsel asked whether "any evidence to the contrary would be fabrication." The witness answered "yes." This court concluded that the plaintiff's counsel improperly initiated the asserted charge of fabrication. *Id.* at 596. No other ground was asserted—such as the defense's opening or closing arguments, or its cross-examination of the plaintiff—to support a conclusion that the defense had brought the plaintiff's credibility into question in a way that could establish that the defense had made a charge of recent fabrication. As a consequence, this court concluded that "no party 'opened the door' by 'attacking the witness' specifically." *Ibid.*[4]

---

[4] That quoted phrase came from the Legislative Commentary to the Oregon Evidence Code:

"If the opposite party wishes to open the door for its admission into evidence by attacking the witness, either through the substantive use of prior inconsistent

In reaching its conclusion, this court distinguished a case from another jurisdiction on which the plaintiff had relied. In *Redmond v. Baxley*, 475 F Supp 1111 (ED Mich 1979), the central issue was whether or not the plaintiff had been raped while in prison. The court concluded that, where the defendant asserted that the plaintiff had never reported the rape to authorities, and when an assertedly natural response would have been to speak out, that assertion was sufficient to constitute an implied charge of recent fabrication. This court noted in *Powers*, 307 Or at 594 n 8, that there was no similar assertion that the plaintiff had failed to report the incident.

In this case, defendant asserts that plaintiff failed to report her symptoms to him during their post-operative consultations. Implicit in that assertion is the suggestion that plaintiff would have informed defendant of the symptoms at that time, had they existed. Therefore, the circumstances of this case are outside the scope of those considered in *Powers* and are consistent with those in *Redmond*.

■■ We hold that an implied charge of recent fabrication has been made when a conflict in testimony is created by one party's assertion that the other party failed previously to report a fact that, under normal circumstances, would have been reported had it existed. That situation was present in this case. The defense asserted that plaintiff never reported symptoms of nausea, vomiting, and bloody stools when she met with defendant or with Dr. Gabe, despite the fact that she would have been expected to have done so had those symptoms existed at that time.[5] Although the defense made no *express* charge that plaintiff had recently fabricated her trial testimony, those circumstances created an *implied* charge of recent fabrication. Plaintiff sought to introduce the prior consistent statements for the purpose of rebutting that implied charge of recent fabrication. Therefore, the trial

---

statements or by impugning the witness' motive, no sound reason is apparent why it should not be received generally." Commentary at 146-47; Laird C. Kirkpatrick, *Oregon Evidence* 328-29 (1982).

[5] In addition to the testimony of defendant and Dr. Gabe, defense counsel emphasized in both opening and closing arguments that the medical records and other evidence showed that plaintiff never informed defendant of the symptoms.

court erred in refusing to admit into evidence the prior consistent statements.

We are left to determine whether the trial court's erroneous evidentiary ruling prejudiced a substantial right with respect to plaintiff's case. *See* OEC 103(1) (stating standard); *Powers*, 307 Or at 597 (same).

■ The issue whether plaintiff made her complaints known to defendant was central to her allegation of postoperative negligence. Defendant testified that plaintiff did not tell him of the symptoms. Defendant's contemporaneous medical records supported that allegation. Dr. Gabe testified that plaintiff did not tell him of the symptoms when he examined her after the surgery performed by defendant. To counter that evidence, there was no evidence, other than plaintiff's own testimony, that supported plaintiff's assertion that she had informed defendant of her symptoms. Because both defendant and another doctor testified that plaintiff never informed them of her symptoms, she was prejudiced by being unable to rebut that testimony with her prior consistent statements. We therefore hold that the trial court's erroneous evidentiary ruling affected a substantial right with respect to plaintiff's allegation of post-operative negligence.

■ With respect to plaintiff's remaining allegations concerning whether defendant negligently performed the surgery, we conclude that the erroneous exclusion of evidence was not prejudicial. The issue of whether, when, and to what extent plaintiff made her complaints *after* surgery known to defendant did not tend to prove any material fact relating to whether defendant acted negligently *during* the surgical operation. We therefore hold that the trial court's erroneous evidentiary ruling did not affect a substantial right with respect to plaintiff's allegations that defendant negligently performed her surgery.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is reversed and remanded for a new trial on the allegation of post-operative negligence; otherwise affirmed.