Argued September 6, affirmed November 8, 1961

# ROY L. HOUCK & SONS *v.* STATE TAX COMMISSION

366 P. 2d 166

*John C. Mull,* Assistant Attorney General, Salem, argued the cause for appellants. With him on the briefs was Robert Y. Thornton, Attorney General, Salem.

*Orval N. Thompson,* Albany, argued the cause for respondent. On the brief were Weatherford & Thompson, Albany.

Before McALLISTER, Chief Justice, and WARNER, PERRY, SLOAN, O'CONNELL, GOODWIN and LUSK, Justices.

WARNER, J.

This is an appeal by the Oregon State Tax Commission, hereinafter referred to as the Commission, from a decree of the circuit court reversing in part and modifying a Commission Opinion and Order made after a review of an order of the Linn County Board of Equalization which placed certain personal property of Roy L. Houck & Sons (a partnership), petitioner-respondent, hereinafter referred to as Houck, on the assessment roll of that county for the year 1958. The Commission's order upholding the county assessment held that pieces of construction equipment carrying fixed-load vehicle licenses were not thereby exempt from an ad valorem taxation for that year.

Although the Commission's order covered other features of the Linn county assessment, we are only interested in that part of the order relating to the assessment of the ad valorem tax on the following nine items of Houck's personal property: 2 LeTourneau scrapers, 4 Euclid graders, 2 Euclid scrapers, and 1 Tournadozer, all previously registered and licensed with fixed-load vehicle licenses by the Motor Vehicle Department of Oregon.

The only issue presented for our resolution is whether the licensed vehicles were entitled to claim exemption from ad valorem taxation by reason of ORS 481.270, as it was on January 1, 1958.

With respect to this issue the circuit court ruled as follows:

"(3) That no appeal was taken from the action of the Motor Vehicle Department in issuing a fixed-load vehicle license to each of the items of personal property above described for the calendar year 1958;

"(4) That pursuant to the provisions of ORS 481.270 as said statute existed on January 1, 1958, each of the above-described items of personal property was exempt from ad valorem taxation; * * *."

The items which are the subject matter of this suit are pieces of earth moving equipment used primarily in construction work. However, they are also designed for use on the highways, having wheels and being self-propelled. No contention is made that these pieces of equipment are not "vehicles" or "motor vehicles" within the definitions found in ORS 481.040(1) and 481.070(2).

In ORS 481.070(2) a *"Vehicle"* is defined as *"every mechanical device moving by any other power than human power* over the highways of the state * * *." (Emphasis supplied.)

In ORS 481.040(1) a *"Motor vehicle"* is defined as *"every self-propelled vehicle* and vehicle designed for self-propulsion except road rollers, farm tractors, traction engines and police ambulances." (Emphasis supplied.)

It is also uncontradicted that each of Houck's vehicles had been registered with the Motor Vehicle Department of Oregon pursuant to ORS 481.105(1). Each had also been issued a fixed-load vehicle license by that department for the year 1958 in conformance with ORS 481.210(5) and were in effect on January 1, 1958.

ORS 481.105(1), as it was on January 1, 1958,[1] stated that: "Every owner of a motor vehicle, trailer or semitrailer, before he operates it upon the highways, shall, for each such vehicle of which he is the owner, cause to be filed * * * an application for registration."

ORS 481.210(5), as it was on January 1, 1958,[2] provided for an annual license fee of $25 for fixed-load vehicles. Such vehicles are defined therein as follows:

"* * * As used in this subsection, 'fixed load vehicles' means vehicles which are not designed or used to carry, convey or move any freight, property, article or thing over the highways except their own weight and the weight of a permanent load in the form of any equipment or appliance constructed as a part of or permanently attached to the body of the vehicle and not designed or used to carry, convey or move any freight, property, article or thing over the highways, but does not include wreckers or tow cars equipped with cranes, hoists or dollies."

It is Houck's position that the fixed-load vehicle licenses were duly, regularly and legally issued by the Motor Vehicle Department and were in full force and effect on January 1, 1958, and subsequent thereto, and, therefore, the Linn County Assessor was without authority to subject such equipment to an assessment for ad valorem taxes because of the exemption granted by ORS 307.030 and the exceptions found in ORS 481.270.

ORS 307.030 generally provides that all tangible personal property located within a county, "*except*

---

[1] ORS 481.105 was amended by ch 683, Oregon Laws 1959.

[2] ORS 481.210(5) was amended by § 4, ch 417, Oregon Laws 1959 (p 675).

*as otherwise provided by law,* shall be subject to assessment and taxation in equal and ratable proportion." (Emphasis supplied.) Petitioner depends in this case upon the exception contained in ORS 481.270 (as it existed on January 1, 1958)[9] and, in part, provided:

"(1) The registration and license fees imposed by this chapter upon vehicles, and upon the owners thereof by reason of such ownership, are in lieu of all other taxes and licenses, * * *."

The Commission's basic argument to the contrary advances two contentions:

1. Only those vehicles within the allowable size limitations for continual lawful operation upon the highways of this state are properly subject to the imposition of registration and license fees as provided in ORS ch 481; and

2. Voluntary registration and licensing not imposed upon vehicles or upon the owners thereof does not have the effect of exempting property from ad valorem taxation.

Although recognizing that petitioner's vehicles come within the definition of fixed-load vehicles, the Commission's position is that a vehicle which cannot be otherwise legally operated or moved over the highways except by special permit under ORS 483.528, may be moved over the highways without being subjected to the general registration and licensing provisions of ORS ch 481, and, therefore, an attempted registration of an oversized vehicle would be "voluntary" and not "imposed" as required by ORS 481.270. With this contention we are unable to agree.

ORS ch 483 sets forth many safety requirements

---

[9] ORS 481.270 was amended by ch 683, Oregon Laws 1959.

which must be met by vehicles before they can be operated upon the public highways of this state. In ORS 483.502(1) it is stated that: "No person shall drive or move and no owner shall cause or permit to be driven or moved on any highway, any vehicle or combination of vehicles of a size or weight exceeding the limitations set forth in ORS 483.502 to 483.536, * * *." ORS 483.504 declares that no vehicle shall exceed a width of eight feet, except as provided in ORS 483.520 and 483.528. ORS 483.520 contains provisions for the issuance of annual permits for oversized equipment, not to exceed eight and one-half feet in width. Houck's vehicles here involved range in size from between nine and eleven feet in width and, therefore, cannot be moved over the highways until they have a special permit issued under ORS 483.528.

■ The types of equipment which can use the highways as authorized under ORS 483.528, include "any vehicle, combination of vehicles, article, property or thing having * * * a size or description not permitted under ORS 483.502 to 483.526." The Commission contends that because a variety of different items are included under ORS 483.528, none of which is intended for regular use on the highways, the vehicles of Houck, being of the class requiring a special permit under ORS 483.528, are, therefore, not subject to the general registration and licensing requirements of ORS ch 481.

In response to this contention of the Commission, we note that neither the frequency of a vehicle's use of the highways, nor whether it is principally used on the highways, nor how it is used on the highways is made a criteria or condition precedent under ORS ch 481 for determining whether a vehicle must be registered and licensed by the Motor Vehicle Depart-

ment; thus these factors are irrelevant to a conclusion of the issues presented here.

In raising this contention the Commission ignores the respective objectives of ORS chs 481 and 483. In *Northwest Auto Co. v. Hurlburt*, 104 Or 398, 408, 207 P 161, it was held that the license fee was a privilege tax required by what is now ORS ch 481 and is exacted as a prerequisite to the privilege of using motor vehicles upon the public highways of the state. The court said:

"* * * In *Briedwell v. Henderson, supra* [99 Or 506, 195 P 575], we held it to be properly called a privilege tax, the result of this tax being substantially a license, a certificate that the person paying the sum required was permitted to use a particular car upon the highway for the whole or what time might remain of the current year."

◼ Whereas, ORS ch 481 is primarily a licensing and registration measure in the form of a privilege tax for the use of the highways, ORS ch 483 is distinctive as comprehending provisions for the regulation and safety of motor traffic and protection of the highways. In ch 483 we find the requirements of the State Highway Commission which must be met before a vehicle can be operated upon the public highways of this state, even though such vehicle has been granted a license by the Motor Vehicle Department under ORS ch 481. The fact that a vehicle does not comply with the safety requirements of ch 483 does not prevent its owner from securing a license under ch 481; it only prevents the owner from operating the vehicle upon the highways until he has complied with the safety requirements of ch 483. This distinction between the general functions and objectives of ORS chs 481 and 483, as above stated, correspond to that aptly pointed out

and subscribed to by the Attorney General in 1957 (See 28 Ops Atty Gen 64 (1956-58)).

As we have previously noticed, the Commission concedes Houck's pieces of equipment were "motor vehicles" as defined in ORS 481.040. ORS 481.105(1) requires every owner of a "motor vehicle" to register it and pay the prescribed fee before it can be operated over the highways of the state. Houck had a choice of two methods of registering: it could either do as it did and obtain an annual fixed-load license under ORS 481.210(5), or it could have operated these vehicles by securing a series of single continuous trip permits under ORS 481.180. The latter statute reads, in part:

> "(1) Any owner of a motor vehicle, trailer or semitrailer not currently registered may be authorized by the department to operate such vehicle over the highways in a single continuous trip. * * *"

It is the Commission's position that since petitioner could have operated the vehicles under an ORS 481.180 permit, petitioner was not required to secure a fixed-load license under ORS 481.210(5), and thus no license was "imposed" upon it, but was one "voluntarily" obtained.

■ As pointed out above, a license fee is merely a privilege tax, a condition precedent to one's use of the highways. If we were persuaded by the Commission's argument, then all applications for licenses under ORS 481.205 to 481.225 would be voluntary since the provisions of ORS 481.180 grant a permit for the movement of *any* unregistered vehicle over the highways for a single continuous trip, not merely for the movement of an oversized, unregistered vehicle.

■ We hold that petitioner's vehicles were subject to the general registration and licensing provisions of ORS ch 481 and were validly licensed as fixed-load vehicles under ORS 481.210(5).

The only question remaining is whether having been so licensed, the vehicles were exempt from ad valorem taxation under ORS 481.270.

■ The Commission correctly contends that statutes creating exemptions are to be strictly construed and in order to gain an exemption a taxpayer must show that he clearly comes within the legislative intent of the exemption statute. *Unander v. Pasquill,* 212 Or 213, 223, 319 P2d 579; *Allen v. Multnomah County,* 179 Or 548, 552, 173 P2d 475; *Northwest Auto Co. v. Hurlburt,* supra (104 Or at 411). However, this rule of construction is limited by another rule found in *Corbett Investment Co. v. State Tax Commission,* 181 Or 244, 250, 181 P2d 130:

> "* * * We are not unmindful of the secondary rule of construction that exemption provisions are to be construed strictly, * * * but such rule cannot control when the intention to grant the exemption is clearly expressed. As was well said by Mr. Justice Cardozo, speaking for the court in *Trotter v. Tennessee,* 290 U.S. 354, 78 L. Ed. 358, 54 S. Ct. 138:
>
>> " 'Exemptions from taxation are not to be enlarged by implication if doubts are nicely balanced. * * * On the other hand, they are not to be read so grudgingly as to thwart the purpose of the lawmakers.' "

■ The language of ORS 481.270, supra, is unequivocal, clear and explicit in its direction that the registration and license fees imposed under ORS ch 481 upon vehicles and their owners are in lieu of all other taxes, including ad valorem taxes. It is self-evident

that when the legislature makes use of such plain, unambiguous, and understandable language in an act, it is presumed to have intended precisely what its words imply and furnishes no occasion to invoke any rules of statutory construction to discover the legislative intent. See *Fox v. Galloway,* 174 Or 339, 347, 148 P2d 922.

For approximately 38 years prior to 1959 the exemption established by ORS 481.270 remained unchanged and unchallenged so far as it applied to equipment of the character owned by Houck. The legislature by ch 417, § 3, Oregon Laws 1959 (now codified as ORS 481.272), defined vehicles of the kind operated by plaintiff, as well as other types, as "special mobile equipment" and withdrew from them, as of January 1, 1960, the ad valorem tax-exempt status which they had had prior to that date.

■ An amendment to an act may be resorted to for the discovery of the legislative intention in the enactment amended. *Layman v. State Unemp. Comp. Com.,* 167 Or 379, 400, 117 P2d 974; *Holman Transfer Co. v. Portland,* 196 Or 551, 566, 249 P2d 175, 250 P2d 929.

In the *Holman Transfer Co.* case, Mr. Justice LUSK cited with approval *People v. Davenport,* 91 NY 574, 591-592, which established the following tests for determination of the legislative intention with respect to such an amendment:

> "The force which should be given to subsequent, as affecting prior legislation, depends largely upon the circumstances under which it takes place. If it follows immediately and after controversies upon the use of doubtful phraseology therein have arisen as to the true construction of the prior law it is entitled to great weight. * * * If it takes place after a considerable lapse of time and the inter-

vention of other sessions of the legislature, a radical change of phraseology would indicate an intention to supply some provisions not embraced in the former statute." (196 Or at 566)

■ Ordinarily, any essential change in the phraseology of a statutory provision indicates an intention on the legislature's part to change the meaning of such provision rather than to interpret it. *Evans v. San Joaquin County,* 58 Cal App2d 799, 802, 138 P2d 805. The *Evans* case quoted the following from *Rieger v. Harrington,* 102 Or 603, 613, 203 P 576:

"By amending that statute, the legislature demonstrated an intent to change the pre-existing law, and the presumption must be that it was intended to change the meaning of the statute in all the particulars wherein there is a material change in the language of the amended act: * * *."

■ It is apparent to us from a comparison of ORS 481.270, as it was on January 1, 1958, with ORS 481.272, as adopted in 1959, that the legislative purpose was to destroy the ad valorem tax exemption which vehicles like Houck's had enjoyed from 1921 to 1959.

For the foregoing reasons we hold that the nine vehicles of petitioner were exempt from ad valorem taxes under the provisions of ORS 481.270, as that section existed on January 1, 1958, and the decree of the circuit court should be affirmed.