Argued and submitted October 4, 1988, the decision of the Court of Appeals and the judgment of the trial court are affirmed February 14, 1989

JOHN DEERE COMPANY,
*Plaintiff/Respondent on Review,*

*v.*

EPSTEIN,
*Defendant-Respondent/Cross-Respondent,*
HADDIX,
*Petitioner on Review.*

(TC 35203; CA A36833; SC S35390)

769 P2d 766

Brian J. MacRitchie, MacRitchie, Petersen & Stiegler, Bend, argued the cause and filed the petition for petitioner on review.

Don G. Carter, McEwen, Gisvold, Rankin & Stewart, Portland, argued the cause and filed the response for respondent on review.

Before Peterson, Chief Justice, Linde, Campbell,** Carson, Jones, Gillette, Justices and Van Hoomissen, Justice pro tempore.

VAN HOOMISSEN, J.

---

** Campbell, J., retired December 31, 1988.

## VAN HOOMISSEN, J.

The issue in this case is whether OEC 513(1)[1] prohibits the finder of fact in a civil action from drawing an inference from a party's assertion of his Fifth Amendment right not to testify against himself. The Court of Appeals held that an inference may be drawn. *John Deere Co. v. Epstein,* 91 Or App 195, 202, 755 P2d 711 (1988). We disagree. We affirm the decision of the Court of Appeals, but do so for a different reason.

Defendant Haddix appeals from a judgment in favor of plaintiff John Deere Company (Deere) based on the trial court's finding that Haddix forged the signature of defendant Epstein on a tractor sale contract. Haddix contends that the court erred by inferring that he forged Epstein's signature from Haddix's refusal on Fifth Amendment grounds to testify about the "Epstein" signature.[2] After trial, the court found

---

[1] OEC 513 provides in part:

"(1) The claim of a privilege, whether in the present proceeding or upon a prior occasion, is not a proper subject of comment by judge or counsel. No inference may be drawn from a claim of privilege."

[2] Haddix testified:

"Q Do you recall a transaction in July 1981 which Mr. Epstein came to you and you negotiated with him for the purchase of a Model 2240 tractor, a 145 loader and 1650 backhoe?

"A I do.

"Q Weren't you the salesman handling the transaction on behalf of Bend Turf & Tractor?

"A That is a good question. I can't tell you to be specific there was—there were two or three of us at the time.

"* * * * *

"Q Do you recall calling [plaintiff] at the office in Portland to obtain prior approval to the proposed financing arrangement?

"A No, I do not remember calling them.

"Q I hand you Plaintiff's Exhibit 1, which is designated a retail installment contract. Do you recognize your signature at the bottom of that contract form?

"A I recognize mine.

"Q Does this refresh your recollection as to the transaction with Mr. Epstein?

"A At this point I refuse to answer any more questions on the grounds of the Fifth Amendment."

Haddix's attorney told the court:

"It is clear that Mr. Haddix is being put in a position whereby if he acknowledges he forged somebody else's signature on a document on which purports to be

that Deere's fraud claim against Haddix had been established by clear and convincing evidence. The Court of Appeals affirmed.

Haddix was a salesman and principal of Bend Turf and Tractor, Inc. He negotiated the sale of a tractor to Epstein. Haddix signed the contract, and it contained a signature purporting to be Epstein's. The contract provided for repossession and sale on default by the buyer and for the buyer to be liable for any deficiency. Epstein took possession of the tractor, made several payments and then defaulted. Deere repossessed the tractor, sold it at a loss and sued Epstein for the deficiency. He defended on the ground that he had not signed the contract. Deere then joined Haddix as a defendant on the theory that, if Epstein had not signed the contract, Haddix had forged Epstein's signature.

At trial, Epstein testified that he had dealt with Haddix in the sale of the tractor and that he had neither signed the contract nor authorized any other person to sign his name. Haddix testified that he had dealt with Epstein but that other salespersons had also been involved in the deal. After acknowledging his own signature on the contract, he refused on Fifth Amendment grounds to answer any further questions. The trial judge stated that he would not draw any inference from Haddix's assertion of the Fifth Amendment.

Deere filed a post-trial memorandum arguing that OEC 513(1) does not bar the finder of fact in a civil action from drawing an inference from a party's assertion of the Fifth Amendment. Subsequently, the trial court issued a memorandum opinion in which it found clear and convincing evidence that Haddix had forged Epstein's signature. The court did not specify the evidence on which it had relied. The judgment which followed states in part: "The Court having considered the evidence introduced, together with arguments made and memoranda submitted by the parties * * *." Neither the memorandum opinion nor the judgment provide any specific evidence that the court drew any inference from Haddix's assertion of the Fifth Amendment.

---

evidence of a debt that constitutes Forgery in the First Degree.

"If he is forced to deny it that also sets him up for prosecution for a perjury * * *."

Haddix appealed, contending that there was not clear and convincing evidence of fraud in the record. He argued that the trial court could only have found fraud by drawing an adverse inference from his assertion of his Fifth Amendment privilege. He relied on the reference in the judgment to the trial court's consideration of "memoranda submitted by the parties" as evidence that the court had accepted and acted on the argument in Deere's post-trial memorandum.[3] The Court of Appeals held that, "in a civil case, adverse inferences may be drawn from a party's assertion of the Fifth Amendment right not to testify." 91 Or App at 202. It did not address Haddix's argument that, absent an adverse inference, there is insufficient evidence in the record to support the trial court's finding that he forged Epstein's signature.

We granted review to consider whether OEC 513(1) prohibits the finder of fact in a civil action from drawing an inference from a party's assertion of his Fifth Amendment privilege not to testify. This is a case of first impression in this court.

■ Haddix concedes that the United States Constitution does not prohibit an inference being drawn in a civil action from a party's assertion of the Fifth Amendment.[4] The issue here, however, is not whether the federal constitution bars drawing an inference but, whether OEC 513(1) does so. The question is whether the word "privilege" in OEC 513(1) includes constitutional privilege. If it does, then OEC 513(1) requires that no inference may be drawn from assertion of a constitutional privilege in any action subject to the Oregon Evidence Code.[5]

---

[3] Haddix relies solely on OEC 513(1). He made no constitutional claim.

[4] *See Baxter v. Palmigiano,* 425 US 308, 96 S Ct 1551, 47 L Ed 2d 810 (1976); *see also Lefkowitz v. Cunningham,* 431 US 801, 97 S Ct 2132, 53 L Ed 2d 1 (1977); *Cabral-Avila v. Immigration and Naturalization Serv.,* 589 F2d 957 (9th Cir 1978), *cert den* 440 US 920 (1979).

[5] OEC 101 provides in part:

"(1) The Oregon Evidence Code applies to all courts in this state * * *

"(2) The Oregon Evidence code applies generally to civil actions, suits and proceedings * * *

"(3) [OEC 503-514] relating to privileges apply at all stages of all actions, suits and proceedings."

OEC 101(3) establishes the general applicability of the OEC privilege rules, including OEC 513. OEC 513 is identical to proposed Rule 513 of the Federal Rules of Evidence (FRE).[6] The OEC drafters adopted some of the privileges specifically enumerated in proposed FRE 502-510 and they added several additional privileges.[7] They adopted proposed FRE 511-513 as OEC 511-513. Those three rules apply to "privileges" in general. The drafters did not, however, adopt proposed FRE 501, a general rule which excluded privileges not enumerated in the proposed Federal Rules of Evidence, federal statutes or the Constitution. Instead, the drafters adopted a different general rule, OEC 514, which states:

> "Unless expressly repealed by [this legislation creating the Oregon Evidence Code], all existing privileges either created under the Constitution or statutes of the State of Oregon or developed by the courts of Oregon are recognized and shall continue to exist until changed or repealed according to law."

OEC 514 recognizes the validity of privileges other than those enumerated in OEC 503-510, specifically privileges created under state authority. Unlike proposed FRE 501, OEC 514 is a

---

[6] The drafters of the Federal Rules of Evidence drafted thirteen proposed rules on privilege (Article V, Rules 501-513). None of the proposed rules was enacted by Congress. Instead Congress enacted a substitute rule (FRE 501) providing that federal courts would recognize common law privileges and the state law privileges of the jurisdictions in which the courts are located. As approved, FRE 501 differs markedly from the proposed FRE 501 drafted by the Federal Advisory Committee.

[7] There are no OEC counterparts to proposed FRE 502, 507 or 508. OEC rules marked with asterisk (*) have no federal counterpart in proposed FRE 502-510.

OEC 503 - Lawyer-Client privilege (FRE 503)

OEC 504 - Psychotherapist-patient privilege (FRE 504)

OEC 504-1* - Physician-patient privilege

OEC 504-2* - Nurse-patient privilege

OEC 504-3* - School employee-student privilege

OEC 504-4* - Clinical social worker-client privilege

OEC 505 - Husband-wife privilege (FRE 505)

OEC 506 - Clergyman-penitent privilege (FRE 506)

OEC 508a* - Stenographer-employer privilege

OEC 509 - Public officer privilege (FRE 509)

OEC 510 - Identity of informer (FRE 510)

rule of *inclusion* which recognizes existing and future state privileges, including judicially developed privileges.[8]

■ The word "privilege" in OEC 513 is not modified by any qualifying language. No express language indicates whether OEC 513 "privileges" include all privileges, all privileges under state authority or only those privileges enumerated in the code (OEC 503-510). Absent convincing evidence to the contrary, we conclude that the unqualified term "privilege" in OEC 513 must be interpreted to encompass all privileges, including privileges not enumerated within the code.[9]

We look to the OEC drafters' commentary to OEC 513 for evidence of their intent:

> "Oregon Rule of Evidence 513 prohibits any comment upon a claim of privilege, and mandates procedures to avoid any inference by a jury based on such a claim. The rule is identical to proposed Rule 513 of the Federal Rules of Evidence. The Legislative Assembly approves the following note of the federal advisory committee:
>
>> " '[Subsection (1).] In *Griffin v. California,* 380 U.S. 609, 614, 85 S. Ct. 1229, 14 L.Ed.2d 106 (1965), the Court pointed out that allowing comment upon the claim of a privilege "cuts down on the privilege by making its assertion costly." Consequently, it was held that comment upon the election of an accused not to take the stand infringed upon [the accused's] privilege against self-incrimination so substantially as to constitute a constitutional violation. While the privileges governed by these rules are not constitutionally based, they are nevertheless founded upon important policies and are entitled to maximum effect. Hence, [this subsection] forbids comment upon the exercise of a privilege in accord with the weight of authority. 8

---

[8] OEC 514 refers only to state privileges; however, the Fifth Amendment is applicable to state court proceedings.

[9] "Privileges" in the identical proposed FRE 513 did not include constitutional privileges. The Federal Advisory Committee comments to proposed FRE 501 states, in part:

> "No attempt is made in these rules to incorporate the constitutional provisions which relate to the admission and exclusion of evidence, whether denominated as privileges or not. The grand design of these provisions does not readily lend itself to codification. The final reference must be the provisions themselves and the decisions construing them. Nor is formulating a rule an appropriate means of settling unresolved constitutional questions." 11 Moore's Federal Practice § 501 App. [2].

Wigmore, Evidence sections 2243, 2322, 2386 (McNaughten rev. 1961); McCormack, Evidence section 76 at 156 (2d ed. 1972) [citations omitted].' " Kirkpatrick, *Oregon Evidence* 199 (1982).

With respect to subsection (3), the commentary states:

"This rule changes Oregon law relating to comments upon and inferences from a claim of privilege that is not constitutionally guaranteed. Nearly all the cases involve the husband-wife privilege in a criminal trial." Kirkpatrick, *supra,* at 200.

We emphasize that this commentary, while useful in interpreting the code, was not adopted by the legislature.

We do not interpret this commentary as excluding constitutional privilege from the scope of OEC 513(1). The federal drafters' clause, "the privileges governed by these rules are not constitutionally based," was correct in conjunction with proposed FRE 501. However, Oregon did not adopt proposed FRE 501, and Oregon's rules of evidentiary privilege differs significantly from the proposed federal rules. Accordingly, we find that the language of the federal advisory committee comment quoted in this paragraph must be considered surplusage in the context of the OEC.

The OEC drafters' comment that "[t]his rule changes Oregon law relating to comments upon and inferences from a claim of privilege that is not constitutionally guaranteed" merely focuses on OEC 513(1)'s effect on non-constitutional privileges. We do not interpret it as excluding constitutional privileges from OEC's coverage just because it did not address the effect of OEC 513(1) on constitutional privilege. We decline to interpret the comment in a manner contradictory to OEC 513(1)'s clear and unambiguous terms.[10]

We find no convincing evidence that the legislature intended to exclude constitutional privileges from OEC 513(1). Therefore, we reject the Court of Appeals' holding that, in a civil case, inferences may be drawn from a party's assertion of the Fifth Amendment right not to testify.

Because, contrary to the Court of Appeals, we hold

---

[10] We recognize that some states have legislatively directed an opposite result. However, our research has failed to find any state with a rule identical to OEC 513(1) which has declared that the rule does not apply to constitutional privileges.

that OEC 513(1) prohibits an inference being drawn from the assertion of a claim of Fifth Amendment privilege, we must proceed to determine whether the record shows that the trial judge wrongfully drew an inference. We are not persuaded that he did.

■ The judge expressly stated that he would not draw any inference from Haddix's assertion of the Fifth Amendment. The judge's statement that he had considered the evidence, arguments and memoranda submitted by the parties in rendering his judgment does not overcome the strong presumption that the judge acted in accordance with his expressly stated intent. We conclude that the judge drew no inference from Haddix's assertion of the Fifth Amendment and, thus, that the judge did not violate OEC 513(1).

■ We will not address Haddix's other claim, that the evidence at trial was insufficient to support the judgment, because he failed to preserve it by appropriate motion in the trial court. Absent such preservation, we will not review the trial court's finding that the judgment was supported by clear and convincing evidence. ORAP 7.19(5).

The decision of the Court of Appeals is affirmed. The judgment of the trial court is affirmed.

**GILLETTE, J.,** specially concurring.

The majority today decides an interesting and important question of Oregon evidence law. Its interpretation of the privileges governed by OEC 513(1) may be correct; I express no opinion on that issue. What is correct, however, is that this Court has no need in this case to answer the question the majority decides. I therefore decline to join in the opinion for the majority.

As the majority acknowledges (307 Or at 351-52), there is absolutely no basis in this record for assuming that the trial judge made any evidentiary use of Haddix's exercise of his constitutional privilege against self-incrimination. To the contrary, the judge affirmatively indicated on the record that he would not consider this factor in weighing the evidence. That being true, the judgment of the Court of Appeals should be affirmed without further comment.

I recognize that the majority may feel either (1) that

the issue should be addressed because we granted review in order to address it or (2) that the issue is one on which this Court's disagreement with the analysis of the Court of Appeals should be announced now. The majority does not state either reason, however, and I would disagree with either or both reasons in any event.

We did not realize when we granted review in this case that the underlying issue was not presented on the record. It is no black mark against us, once we do realize it, to simply say so and move on to other cases.

Our (or, more precisely, the majority's) disagreement with the Court of Appeals is no more important as a purely abstract matter than is any other abstract disagreement. And this disagreement is abstract. There may never be another case in which the issue needs to be addressed. Or there may be another, but the Court of Appeals may change its mind. Or there may be another, and the Court of Appeals may act as it did in this case. In the latter event, the requisite number of members of this Court might or might not wish to allow review at that time. As to the other two cases, the first would mean that this issue would never need to be addressed and, in the second, even the present majority might choose to deny review. There is no reason to decide what the majority decides today.

I concur in the result.

Peterson, C. J., joined in this concurring opinion.