Argued and submitted June 7, 1990, peremptory writ to issue requiring vacation of order of circuit court December 12, 1991

STATE ex rel William Russell DAVEY,
*Plaintiff-Relator,*

*v.*

The Honorable Kimberly C. FRANKEL,
*Defendant.*

(SC S36568)

823 P2d 394

Janet Lee Hoffman, Portland, argued the cause for plaintiff-relator. With her on the brief and reply brief were Karen A. Steele and Hoffman, Matasar & Glaeser, Portland.

Janet A. Metcalf, Assistant Attorney General, Salem, argued the cause for defendant. With her on the answering brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

CARSON, C. J.

## CARSON, C. J.

Plaintiff-relator is the defendant in a Multnomah County Circuit Court criminal proceeding. He is charged in a four-count indictment with third degree rape and sodomy. The parties do not dispute that relator has complied with the statutory prerequisites entitling him to a pretrial hearing under OEC 412[1] to determine the admissibility of evidence of the victim's past sexual behavior.

The trial court judge, who is the defendant in this mandamus proceeding, ruled that relator was entitled to a pretrial OEC 412 hearing and that the hearing would be closed to the public pursuant to OEC 412(3)(b), which provides that "the court shall order a hearing in chambers to determine if such evidence is admissible." In this mandamus proceeding, relator seeks a writ requiring the trial court judge to vacate the order excluding the public from the OEC 412 hearing.[2] We

---

[1] OEC 412, which also is known as the "Rape Shield Law," provides, in part:

"(2)     Notwithstanding any other provision of law, in a prosecution for a crime described in ORS 163.355 to 163.425, * * * evidence of a victim's past sexual behavior * * * is * * * not admissible, unless such evidence other than reputation or opinion evidence is:

"(a)     Admitted in accordance with paragraphs (a) and (b) of subsection (3) of this section; and

"(b)     Is evidence that:

"(A)     Relates to the motive or bias of the alleged victim; or

"(B)     Is necessary to rebut or explain scientific or medical evidence offered by the state; or

"(C)     Is otherwise constitutionally required to be admitted.

"(3)(a)   If the person accused of committing rape, sodomy or sexual abuse or attempted rape, sodomy or sexual abuse intends to offer under subsection (2) of this section evidence of specific instances of the alleged victim's past sexual behavior, the accused shall make a written motion to offer such evidence * * *.

"(b)     The motion described in paragraph (a) of this subsection shall be accompanied by a written offer of proof. If the court determines that the offer of proof contains evidence described in subsection (2) of this section, the court shall order a hearing in chambers to determine if such evidence is admissible. At such hearing the parties may call witnesses, including the alleged victim, and offer relevant evidence. Notwithstanding ORS 40.030(2), if the relevancy of the evidence which the accused seeks to offer in the trial depends upon the fulfillment of a condition of fact, the court, at the hearing in chambers or at a subsequent hearing in chambers scheduled for such purpose, shall accept evidence on the issue of whether such condition of fact is fulfilled and shall determine such issue."

[2] Relator's petition for a writ of mandamus relies on Article I, section 10, of the Oregon Constitution ("[n]o court shall be secret, but justice shall be administered,

issued an alternative writ of mandamus, requiring that the trial court judge vacate the order or show cause why she should not. Now (after pleading, briefing, and argument), we issue a peremptory writ of mandamus.

As a preliminary matter, we recognize that a writ of mandamus "shall not be issued in any case where there is a plain, speedy and adequate remedy in the ordinary course of the law." ORS 34.110. The parties dispute whether appeal would prove to be an adequate remedy in this case, precluding the issuance of the writ.

Unlike in the ordinary criminal or civil case, including cases involving various statutory evidentiary privileges and motions to suppress based on unconstitutional searches and seizures, the nature of the constitutional right that relator asserts under Article I, section 10, of the Oregon Constitution is not personal to him. *Compare, e.g.*, OEC 503(2) (the client "has" the lawyer-client privilege); *State v. Davis*, 295 Or 227, 233-35, 666 P2d 802 (1983) (the court will suppress evidence when necessary to vindicate an individual's constitutional right). As this court held in *Oregonian Publishing Co. v. O'Leary*, 303 Or 297, 301-02, 736 P2d 173 (1987):

> "[T]he command that '[n]o court shall be secret' is not a statement of an individual right that may be waived or compromised by the individual. [*State ex rel Oregonian Pub. Co. v. Deiz*, 289 Or 277, 282-83, 613 P2d 23 (1980).] Members of the media and the public may benefit from, and assert in court in their own behalf, the prohibition of section 10 on secret courts, but the prohibition is not a right that is personal to themselves. Rather, it 'is one of those provisions of the constitution that prescribe how the functions of government shall be conducted.' *Deiz*, 289 Or at 288 (Linde, J., concurring)."

If relator is not convicted at trial or if relator enters into a plea agreement, there can be no appeal to raise the issue of the constitutionality of the closed OEC 412 hearing. ORS 138.040, 138.050, and 138.053. Moreover, if relator is correct, the very fact that a closed hearing was held, no matter what

---

openly and without purchase * * *"); Article I, section 11, of the Oregon Constitution (the "right to public trial"); and the First and Sixth Amendments to the United States Constitution (free speech and public trial). Our decision, which concludes that public exclusion from the "in chambers" hearing is not required by OEC 412, obviates any need to address relator's constitutional contentions, and we express no opinion concerning them.

follows thereafter, arguably is a separate harm that cannot be undone. In this unusual circumstance, then, appeal would not be an adequate legal remedy to vindicate the rights claimed to be at stake. Mandamus, therefore, may be appropriate, even though in our disposition we do not need to reach the constitutional claim.

Although the text of the statute is ambiguous, the state (in defending the constitutionality of the statute) and relator (in attacking it) agree that "in chambers" means "outside the presence of the public and the jury." Our review of the text of the "in chambers" provision, the intent of the legislature discernible from the text and context of OEC 412 generally, and the intent of the legislature discernible from the legislative history, leads us to a different conclusion. *See* ORS 174.010, 174.020.

"In chambers" is not defined in the Oregon Evidence Code, nor is it a term that is susceptible of only one meaning. It could mean that the hearing must not take place in the courtroom but rather must take place in the judge's office, commonly referred to as the judge's "chambers." This meaning carries with it no necessary exclusionary scope, although it reasonably implies the exclusion of at least the jury, and it could result in some *de facto* exclusion of others by virtue of the location and size of the office.

"In chambers" instead could have a meaning akin to that of an "*in camera*" proceeding, which can entail various levels of mandatory exclusion, including exclusion of the public and exclusion of one or more parties or counsel. *See, e.g.,* OEC 510(4)(c) (*in camera* proceedings relating to the disclosure of the identity of a government informant).

Moving from the term "in chambers" itself to the legislative intent discernible from the text and context of OEC 412 more generally, OEC 412 is a statute "the principal purpose of [which] is to protect victims of sexual crimes from the degrading and embarrassing disclosure of intimate details about their private lives." Legislative Commentary to OEC 412, reprinted in Kirkpatrick, Oregon Evidence 202 (2d ed 1989). That goal is accomplished primarily by defining the scope of relevant admissible evidence narrowly and by conducting the admissibility hearing "in chambers."

Turning from the text and context of "in chambers" to its legislative history, we find the history to be of value in discerning the legislature's intent. The provision of the Rape Shield Law that is under attack in this case has evolved from a form of the statute first enacted in 1975. The 1975 law provided that "the court shall conduct [the admissibility] hearing out of the presence of the jury." Or Laws 1975, ch 176, § 2(4) (codified as ORS 163.475(4)). In 1977, ORS 163.475 was amended to require the admissibility hearing to be held before trial except for good cause shown. Or Laws 1977, ch 822, § 1. The 1977 amendments also added the additional term "and the public" to the phrase "out of the presence of the jury." *Id*. ORS 163.475 was replaced in 1981 with the adoption of the Oregon Evidence Code and the enactment of OEC 412 in its present form, requiring that the hearing be held "in chambers." Or Laws 1981, ch 892, § 31.

The 1981 enactment of OEC 412 occurred against the backdrop of a then-recent decision of this court, holding that Article I, section 10, of the Oregon Constitution, forbade the closing of a juvenile court proceeding to the press. *State ex rel Oregonian Pub. Co. v. Deiz*, 289 Or 277, 613 P2d 23 (1980). *Deiz* was a significant decision, both for the fact that it was this court's first authoritative construction of Article I, section 10, and for its implications for a variety of traditionally closed proceedings.

At the time that the legislature considered and enacted OEC 412 in 1981, an appellate case was pending that questioned the effect of *Deiz* on the closed-hearing requirement of ORS 163.475, the predecessor to OEC 412. After the 1981 legislative session ended, a divided Court of Appeals upheld the validity of ORS 163.475, review was allowed by this court, and then review was dismissed by this court because of the limited scope of the issue presented by the ruling under a repealed statute. *State v. Blake*, 53 Or App 906, 633 P2d 831 (1981), *rev dismissed*, 292 Or 486, 640 P2d 605 (1982).[3] In dismissing that proceeding, this court stated: "When we are required to apply

---

[3] Neither the briefing nor the argument in *State v. Blake*, 53 Or App 906, 633 P2d 831 (1981), *rev dismissed*, 292 Or 486, 640 P2d 605 (1982), had advised the court of the pertinent 1981 statutory change. The proceeding was dismissed when this court became aware of the change while the case was under advisement. *Id*. at 488.

the phrase 'in chambers' it will be necessary to judicially construe the phrase." 292 Or at 489.

■       The term "in chambers" was not discussed on the floor of either the Oregon House or Senate. The terms *"in camera"* and "in chambers" apparently were used interchangeably in committee discussions, with no precise meaning. The term "in chambers" appears in Federal Rule of Evidence 412, upon which OEC 412 was based in part, but the term is not defined in that rule, either. The dissent correctly notes that federal legislative history suggests that one intended purpose of an "in chambers" hearing under FRE 412 was to protect the privacy of victims of rape. The legislation that added the requirement for an ancillary hearing under the Federal Rules of Evidence, H.R. 4727, was, in fact, titled "Privacy Protection for Rape Victims Act of 1977." Its original author stated: "The purpose of [the legislation] is to make the prosecution of Federal rape cases more effective and equitable for rape victims, and to serve as a model statute for State laws." 124 Cong. Rec. 36,256 (1978) (statement of Senator Bayh). Professors Wright and Graham reasonably concluded from the floor debates that, in choosing the "in chambers" phrasing, "Congress was obviously concerned about the degree of privacy to be afforded rather than the physical location of the hearing." 23 Wright and Graham, Federal Practice and Procedure 621 n 18, § 5391 (1980). It does not necessarily follow, however, that, by adopting federal *wording*, Oregon legislators shared the identical *intent* of their federal counterparts, nor does it necessarily follow that the Oregon Legislative Assembly adopted the federal wording out of a conviction that "in chambers" had a single meaning or that the *only* way to protect the privacy of rape victims was to exclude the public entirely from preliminary evidentiary hearings.

■       The Oregon House and Senate committee members did not comment on the constitutionality of the "in chambers" provision or appear to attempt to formulate the scope of the exclusion in light of this court's decision in *State ex rel Oregonian Pub. Co. v. Deiz, supra,* issued the year before.[4] There

---

[4] One committee witness noted the issue raised by *State ex rel Oregonian Pub. Co. v. Deiz,* 289 Or 277, 613 P2d 23 (1980), observed the pendency of a case in the appellate courts challenging the exclusion of the public from the rape victim's hearing under ORS 163.475 (presumably *State v. Blake, supra*), and assumed that

was no express legislative intent to change the scope of the pre-existing exclusion, defined by the predecessor statute, ORS 163.475, to exclude the public and the jury. Indeed, the Legislative Commentary to the Evidence Code and the Advisory Committee Commentary to the Evidence Code[5] give some support to a conclusion that the legislature did *not* intend to change the scope of the existing exclusion.[6] The Legislative Commentary states:

> "The purpose of the *in camera* hearing is twofold. It gives the defendant an opportunity to demonstrate to the court why certain evidence is admissible and ought to be presented to the jury. At the same time it protects the privacy of the victim in those instances where the court finds that evidence is inadmissible." Kirkpatrick, Oregon Evidence, *supra*, at 202.

The Advisory Committee Commentary to its proposed form of OEC 412, which used the term "in chambers," states that "there must be an in camera hearing — that is, a proceeding that takes place in the judge's chambers out of the presence of the jury and the general public." Advisory Committee Commentary, Proposed Evidence Code, 120 (1979). Both commentaries discuss the relationship of OEC 412 to the law that it replaced, but neither commentary states that "in chambers"

---

the courts would resolve the issue. Testimony of Jim McCandlish, representing the Oregon Criminal Defense Lawyers Association, before the Senate Committee on Justice: Tape, July 22, 1981, H-81-JUD-311B, at 113-25. The Oregon District Attorneys Association warned the committee in another context that, in light of *State ex rel Oregonian Pub. Co. v. Deiz, supra,* "there might be substantial constitutional problems with a procedure which allows for a closed in camera hearing." Report to Joint Interim Committee on the Judiciary regarding HB 2030 Article V Privileges, § 38 (1981).

[5] The Advisory Committee on Evidence Law Revision was appointed in 1974 by the Law Improvement Committee, a legislatively-created body. The Advisory Committee was composed of practicing lawyers, judges, and law professors. In September 1979, the committee submitted a proposed new Evidence Code, accompanied by an extensive commentary. That proposed code and commentary provided the foundation for the work of the Subcommittee on Evidence of the Interim Judiciary Committee during 1979-80. The subcommittee's version of the code, with the Advisory Committee's Commentary as supplemented, was submitted for consideration to the 1981 Legislative Assembly, which adopted the Oregon Evidence Code. Kirkpatrick, Oregon Evidence, xxix-xxx (2d ed 1989).

[6] We are not bound by the Commentary but do recognize it as useful background concerning rules of evidence. *State ex rel Juv. Dept. v. Ashley,* 312 Or 169, 179, 818 P2d 1270 (1991); *State v. McClure,* 298 Or 336, 344, 692 P2d 579 (1984).

was intended to change the law's pre-existing exclusion of the public and the jury.

■    Although one reasonably could read OEC 412(3)(b) to require public exclusion from the OEC 412 hearing, we believe that the other possible interpretation is the better one. "In chambers," as used in OEC 412(3)(b), means that the hearing must take place in the judge's office, commonly referred to as the judge's "chambers." The statute does not categorically exclude the public from attending.

This interpretation has several virtues. First, it reflects a common usage of the statutory term. *See Perez v. State Farm Mutual Ins. Co.*, 289 Or 295, 299, 613 P2d 32 (1980) (in the course of holding that "disability" does not include death, the court stated that, "[i]n construing a statute, words of common usage are to be given their natural, plain and obvious meaning"). "In chambers" as commonly refers to the *place* of a proceeding — the judge's office — as it does to the *range of people* who may attend the proceeding. Black's Law Dictionary 230 (6th ed 1990). Moreover, a customary "in chambers" proceeding may, in fact, be open: "We know from experience [that] a hearing 'in chambers' is not always in practice one at which everyone except the judge, court officers, the parties, the attorneys, and perhaps the witness is necessarily excluded." *State v. Blake, supra*, 292 Or at 488-89. In OEC 412, the legislature did not use the term *"in camera,"* which ordinarily carries with it some necessarily exclusionary scope. *See, e.g.*, OEC 510(4)(c) (*"in camera"* proceedings relating to informant's identity); *State ex rel Carlile v. Lewis*, 310 Or 541, 544-45, 800 P2d 786 (1990) (interpreting *"in camera"* in ORS 135.873(2) in respect of protective orders).

Second, this interpretation of "in chambers" reflects legislative history. In 1981, the legislature repealed a statute that provided that hearings of the kind at issue shall be conducted *"out of the presence of* the jury and *the public."* ORS 163.475 (1979). (Emphasis added.) The legislature replaced that wording, to provide instead for hearings conducted "in chambers." Or Laws 1981, ch 892, § 31. This court has held that a material change in statutory wording presumptively signifies a change in meaning. *Fifth Avenue Corp. v. Washington Co.*, 282 Or 591, 597, 581 P2d 50 (1978); *Roy L. Houck & Sons v. Tax Com.*, 229 Or 21, 32, 366 P2d 166 (1961). The parties would

interpret the new wording to mean exactly the same thing as the old, different wording. That result is permissible, but it affords no substantive or presumptive recognition to the fact that there was an obvious legislative departure from clear pre-existing statutory text.

Third, this interpretation is in harmony with legislative intent. As we noted, 312 Or at 290, the principal purpose of OEC 412(3)(b) is "to protect victims of sexual crimes from the degrading and embarrassing disclosure of intimate details about their private lives." There is no doubt that a hearing in a smaller, less exposed, and less intimidating setting — in chambers — is less degrading and less embarrassing than a courtroom hearing. The legislature, consistent with its general purpose, could have meant to provide for a hearing in chambers.[7]

For each of these reasons — acceptable common usage of the statutory term and consistency with both the evolution and the purpose of the law — we conclude that OEC 412(3)(b) requires that the hearing to determine admissibility of evidence of the victim's past sexual behavior shall be held in the judge's chambers. OEC 412(3)(b) does not mandate public exclusion from that hearing.

The trial court judge acted in reliance upon her conclusion that OEC 412(3)(b) mandated a hearing closed to the public. The trial court judge, therefore, acted under an erroneous perception of her legal duty. A peremptory writ of mandamus is appropriate to require the trial court judge to vacate the closure order and to permit her to reconsider the issue of public exclusion under a correct interpretation of the statute.

Peremptory writ to issue requiring vacation of order of circuit court.

---

[7] Contrary to the dissent's assertion, we would not necessarily effectuate the legislative intent to protect rape victims by construing "in chambers" to require exclusion of the public. We have taken notice of the possibility that such an interpretation of "in chambers" might conflict with Article I, section 10, of the Oregon Constitution. *State v. Blake, supra,* 292 Or at 489.

Moreover, striking "in chambers" from OEC 412(3)(b) would result in requiring courts to hold evidentiary hearings regarding a rape victim's sexual history in open court, a result which *clearly* does not comport with the legislature's intent to protect victim privacy.

**UNIS, J.,** dissenting.

The issue in this case is whether a provision of Oregon's "Rape Shield Law,"[1] OEC 412(3)(b), which mandates that a hearing be held "in chambers" on the admissibility of evidence of the alleged victim's past sexual behavior, requires exclusion of the public from such a hearing, and, if so, whether that statutory provision violates Article I, section 10, of the Oregon Constitution ("[n]o court shall be secret, but justice shall be administered[] openly"), Article I, section 11, of the Oregon Constitution (the "right to public trial"), or the First or Sixth Amendments to the United States Constitution (the right to free speech and the right to public trial, respectively). The majority concludes that exclusion of the public from the "in chambers" hearing is not required by OEC 412(3)(b) and, therefore, expresses no opinion concerning plaintiff-relator's constitutional claims.

In my view, OEC 412(3)(b) requires exclusion of the public from a hearing "in chambers" on the admissibility of evidence of an alleged victim's past sexual behavior. I believe, therefore, that this court should address relator's constitutional contentions concerning exclusion of the public from such hearings.

In construing a statute, the task of this court is to discern the intent of the legislature. ORS 174.010; *State ex rel Juv. Dept. v. Ashley*, 312 Or 169, 174, 818 P2d 1270 (1991); *id.* at 185 (Unis, J., dissenting); *Mattiza v. Foster*, 311 Or 1, 4, 803 P2d 723 (1991). "The inquiry into legislative intent, therefore, begins with an examination of the language of the statute itself." *State ex rel Juv. Dept. v. Ashley, supra*, 312 Or at 185. When the language of the statute provides sufficient insight into legislative intent, it is not appropriate to consult legislative history. *Mattiza v. Foster, supra*; *State ex rel Juv. Dept. v. Ashley, supra*, 312 Or at 185-86 (Unis, J., dissenting).

---

[1] OEC 412, commonly referred to as Oregon's "Rape Shield Law," is set out in footnote 1 of the majority's opinion, 312 Or at 288 n 1.

"The term 'rape shield' has been universally applied to laws restricting the examination of a complaining witness about her sexual past. As such they create a 'privacy shield' for such witnesses. They certainly do not provide a protection from rape and therefore seemed to have been misnamed." Tuerkheimer, *A Reassessment and Redefinition of Rape Shield Laws*, 50 Ohio State L J 1245, 1247 n 16 (1989).

In the context of OEC 412, however, the language "in chambers" in OEC 412(3)(b) does not provide sufficient insight into legislative intent. "In chambers" is not defined in the Oregon Evidence Code. It is a phrase that does not have a precise legal meaning as to who is entitled to be present. *See State v. Blake*, 292 Or 486, 488-89, 640 P2d 605 (1982) (commenting on, but not interpreting, phrase "in chambers"). It is unclear from the terms and context of OEC 412(3)(b), or from any other provision in the Oregon Evidence Code, whether the public is entitled to be present at an "in chambers" OEC 412(3)(b) hearing. Because the statutory language does not provide sufficient insight into legislative intent, it is appropriate to turn to legislative history to help discern legislative intent. *State ex rel Juv. Dept. v. Ashley, supra*, 312 Or at 175; *Mattiza v. Foster, supra*, 311 Or at 4.

Legislative history indicates that OEC 412 is based on Federal Rule of Evidence (FRE) 412, which was enacted by Congress as the Privacy Protection for Rape Victims Act of 1978, PL 95-540 (92 Stat 2046). Kirkpatrick, Oregon Evidence 201 (2d ed 1989). OEC 412(3)(b), which requires that the rape-shield hearing be held "in chambers," is derived from, and essentially identical to, FRE 412(c)(2). Because Oregon adopted the federal language, federal legislative history pertaining to the federal language is relevant in interpreting the purpose of the language. *See Karsun v. Kelley*, 258 Or 155, 161, 482 P2d 533 (1971) (legislative history of a federal act is of significant interest in construing a statute which adopted substantially the same terms as set forth in the federal act).

Federal legislative history reveals discussion on the House and Senate Floor of Congress prior to the passage of FRE 412 which makes clear that the "in chambers" hearing is to take place out of the presence of the press and public. For example, in the House of Representatives, Representative Mann spoke in support of FRE 412:

"The new rule * * * provides that before evidence is admitted * * *, there must be an *in camera hearing — that is, a proceeding that takes place in the judge's chambers out of the presence of the jury and the general public.* * * *

"The purpose of the *in camera hearing* is twofold. It gives the defendant an opportunity to demonstrate to the court why certain evidence is admissible and ought to be presented to the

jury. At the same time, it *protects the privacy of the rape victim in those instances when the court finds that the evidence is inadmissible.* Of course, if the court finds the evidence to be admissible, the evidence will be presented to the jury in open court.

"The effect of this legislation, therefore, is to preclude the routine use of evidence of specific instances of a rape victim's prior sexual behavior. Such evidence will be admitted only in clearly and narrowly defined circumstances and only after an in camera hearing. * * *

*"[T]he principal purpose of this legislation is to protect* rape *victims from* the degrading and embarrassing *disclosure* of intimate details *about their private lives.* * * * [The legislation] does not * * * sacrific[e] any constitutional right possessed by the defendant. The bill before us fairly balances the interests involved — the rape victim's interest in protecting her private life from unwarranted public exposure; the defendant's interest in being able adequately to present a defense by offering relevant and probative evidence; and society's interest in a fair trial, one where unduly prejudicial evidence is not permitted to becloud the issues before the jury." (Emphasis added.)

124 Cong. Rec. 34,913 (1978).

Senator Biden, speaking in support of FRE 412 in the Senate, said:

"The bill * * * establish[es] a special in camera procedure whereby the question of admissibility could be litigated without harm to the *privacy rights of the [alleged] victim* or the constitutional rights of the defendant." (Emphasis added.)

124 Cong. Rec. 36,256 (1978).

As illustrated by the remarks of Representative Mann and Senator Biden, the phrase "in chambers," which appeared in the text of the proposed new federal evidence rule (what is now FRE 412), was often referred to in congressional debates as an *"in camera"* hearing. According to Professors Wright and Graham, the references to *"in camera"* and "out of the presence of the jury and the general public" indicate that *"Congress was obviously concerned about the degree of privacy to be afforded rather than the physical location of the hearing."* (Emphasis added.) 23 Wright and Graham, Federal Practice and Procedure 621 n 18, § 5391 (1980).

The Advisory Committee on the Oregon Evidence Code (Advisory Committee) proposed what is now OEC 412(3)(b), which derived from, and is essentially identical to, FRE 412(2)(c). In its summary of OEC 412, the Advisory Committee iterated almost verbatim the substance of the first three paragraphs, quoted above, of what Representative Mann had stated with respect to FRE 412. Proposed OEC Report, Interim Joint Committee on the Judiciary 120-21 (December 1980) (Exhibit E, Joint Committee on Judiciary 49-50 (December 7, 1979)).

In committee discussions about what is now OEC 412(3)(b), the terms "in chambers" and *"in camera"* were used interchangeably, as they were in congressional debates on FRE 412. The commentary[2] to OEC 412 echoes essentially the same statements made by Representative Mann as to the twofold purpose of the *in camera* hearing and the principal purpose of the legislation, including the two key sentences:

> "The principal purpose of OEC 412 is to protect victims of sexual crimes from the degrading and embarrassing *disclosure* of intimate details *about their private lives.* * * *
>
> "* * * * *
>
> "[The *in camera* hearing] *protects* the privacy of the victim in those instances when the court finds that evidence is inadmissible." (Emphasis added.)

Legislative Commentary to Oregon Evidence Code 81-82 (1981). The Oregon legislature, in enacting OEC 412, thus

---

[2] Although the commentary is not an official part of the Oregon Evidence Code and was not approved by the entire legislature, it provides highly useful background regarding each rule and guidance to courts and attorneys in interpreting those rules. *State v. McClure*, 298 Or 336, 344, 692 P2d 579 (1984). In several cases, this court has found the commentary useful in determining the effect and scope of a particular rule in the Oregon Evidence Code. *See, e.g., State v. Carlson*, 311 Or 201, 211, 808 P2d 1002 (1991); *John Deere v. Epstein*, 307 Or 348, 355, 769 P2d 766 (1989); *Powers v. Officer Cheeley*, 307 Or 585, 592, 771 P2d 622 (1989). *Cf. State v. Campbell*, 299 Or 633, 653, 705 P2d 694 (1986) (Campbell, J., dissenting) (in interpreting OEC 803(18a), the hearsay exception for complaint of sexual misconduct, the court ignored the commentary to that rule); *State ex rel Juv. Dept. v. Ashley*, 312 Or 169, 191, 818 P2d 1270 (1991) (Unis, J., dissenting) ("commentary [to OEC 504] does not accurately reflect the intent of the legislature as to the meaning of the statutory phrase 'mental or emotional condition' " in OEC 504(1)(c) and OEC 504(2)). In this instance, the commentary does accurately reflect legislative intent and that OEC 412, like FRE 412, is strongly grounded in privacy and respect for the integrity of an alleged victim of a sex crime.

created, in effect, a "privacy shield"[3] for a complainant about her sexual past.

The apparent intent of the "in chambers" hearing provision in OEC 412(3)(b) is to protect as far as possible a victim's right to privacy about her sexual past[4] and to make the prosecution of sexual crimes more effective and equitable for complainants. Stated differently, in enacting OEC 412, the Oregon legislature sought to encourage victims of sexual misconduct to report and assist in the prosecution of the crime not only by preventing highly prejudicial evidence from reaching the jury and thus helping to protect jury impartiality, but also by preventing victims from having their past sexual history exposed to the public. "The prospect of having past sexual conduct divulged affects not only the victim's decision to report [the sex crime], but also the victim's willingness to see the prosecution through." Note, *The Constitutionality of Statutorily Restricting Public Access to Judicial Proceedings: The Case of the Rape Shield Mandatory Closure Provision*, 66 Boston Univ. L Rev 271, 276 (1986).

The remedial effect of OEC 412, apparently intended by the legislature, would be completely frustrated or circumscribed if the general public were permitted to be present at an OEC 412 hearing. Only the exclusion of the public can give the phrase "in chambers" actual exclusionary effect, ensuring, as far as possible, the privacy of the victim and respect for her integrity. Mandatory public exclusion from OEC 412 hearings is consistent with the purpose and legislative history of OEC 412.

In sum, in view of the terms of OEC 412(3)(b), the intent of the Oregon legislature as manifested by OEC 412 as a whole, the legislative history of OEC 412, the legislative history of FRE 412, after which OEC 412 is modeled, and the legislative history of FRE 412(2)(c), the federal counterpart to OEC 412(3)(b), I conclude that the term "in chambers" in OEC

---

[3] *See supra* note 1.

[4] The Oregon legislature sought to limit the admissibility of past sexual history of a victim of a crime of sexual misconduct to instances of past sexual behavior which (1) "[r]elate[] to the motive or bias of the alleged victim[,]" OEC 412(2)(b)(A); (2) are "necessary to rebut or explain scientific or medical evidence offered by the state[,]" OEC 412(2)(b)(B); and (3) admission "[i]s otherwise constitutionally required[,]" OEC 412(2)(b)(C).

412(3)(b) has reference to both the physical location of the hearing (*i.e.*, the judge's chambers or office) and the exclusion of the public and jury from the hearing.[5] That statutory provision's use of the term "shall" is a mandate to the trial court to hold all OEC 412 hearings in chambers, just as the trial judge interpreted the law to require in this case. I believe, therefore, that this court should decide whether closure of such a hearing to the public is constitutionally impermissible, as relator contends.

I respectfully dissent.

Van Hoomissen, J., joins in this dissenting opinion.

---

[5] It is interesting to note that the state (in defending the constitutionality of the statute) and the relator (in attacking it) agree that "in chambers" means "outside the presence of the public and the jury."